[No. 6530.]

## MICHIGAN STOVE COMPANY V. PUEBLO HARDWARE COMPANY.

1. CONTRACTS—*Mutual Assent*—Mutual assent is established by an offer of one party, and acceptance by the other; and assent by one party to the offer of the other may consist in words alone, or in both words and acts—(163).

Where one party performs the act which the offer of the other contemplates, this is effectual as an acceptance of the offer—(163).

2. COUNTERCLAIM—*For a Tort*—The negligent failure to perform a contract affords an action on the contract, and may found a counterclaim in an action brought upon a different contract—(163, 164).

3. ——*Unliquidated Claim*—A claim is not to be rejected as a counterclaim merely because it is unliquidated—(164).

The provisions of the code have for their purpose the avoidance of circuity and multiplicity of actions, and should be liberally construed—(164).

4. PARTNERSHIP—*Two, of the Same Partners*, constitute in law a single partnership. Either may maintain an action upon a contract made with the other, without an assignment—(164).

5. BAILEE—*for Hire*—Plaintiff, a merchant in Chicago, in consideration that defendant, a merchant of Colorado, should · purchase of him certain goods, and pay an additional consideration, agreed with the latter that he would receive, and care for other goods, purchased by the defendant, from another dealer, and load them in the same car in which the goods purchased

of plaintiff should be loaded. *Held*, that plaintiff was a bailee for hire and bound to ordinary diligence—(165).

6. NEGLIGENCE—*Ordinary Care*, is that degree of care whicn an ordinarily prudent person would exercise under similar circumstances—(165).

The evidence examined and held to disclose a want of ordinary care on the part of plaintiff, in performing its duty as bailee—(165, 166).

*Error to Pueblo District Court*—HON. J. E. RIZER, Judge.

Messrs. HARTMAN & BALLREICH and Mr. CHAS. L. AVERY plaintiff in error.

Messrs. ADAMS & GAST for defendant in error.

Mr. JUSTICE GABBERT delivered the opinion of the court.

Plaintiff in error brought suit against the defendant in error on an account, in the sum of $422.33 and interest, for goods, wares and merchandise sold the latter. The defendant answered, admitting the indebtedness sued upon, and by way of defense, and as a counter-claim, alleged that plaintiff was indebted to it in the sum of $255.70, which plaintiff owed the Holmes Hardware Company, which indebtedness the latter had assigned to it. In conjunction with the answer, the defendant offered to allow judgment to be taken against it for the difference between the two accounts. The plaintiff filed a replication to the averments of the answer, upon which the counter-claim was based, and subsequently the case was tried and submitted to a jury on the counter-claim, with the result that the counter-claim was allowed, and judgment rendered in favor of plaintiff for the difference between the two accounts. Plaintiff brings the case here for review on error.

It is claimed that the counter-claim should not have been allowed for the following reasons: (1) It

was based upon an alleged contract between the plaintiff and the Holmes Hardware Company, which the evidence failed to establish; (2) that it was based upon an alleged tort; (3) that the assignment of the counter-claim was without consideration; and (4) that it represented an unliquidated claim. We shall consider these several propositions in the order named.

In the answer it is alleged that the plaintiff promised and agreed with the Holmes Hardware Company, for and in consideration of the purchase from plaintiff of certain goods, wares and merchandise, and for the further consideration of eleven dollars, to receive, care for, and load upon a car in the City of Chicago, in which the merchandise purchased from plaintiff was to be loaded, certain articles of merchandise which the Holmes Hardware Company had purchased from other hardware dealers in that city; that these articles were received by the plaintiff in good condition, but that it so negligently stacked and placed them that they were exposed to storms and rains, whereby they were greatly damaged. It is claimed that the testimony does not establish the contract thus pleaded. We think it does. It appears that the Holmes Hardware Company and the Pueblo Hardware Company are owned and controlled by the same individuals, but under different partnership names; that the business of the partnership is conducted at two places in the City of Pueblo, one under the name of The Pueblo Hardware Company and the other under the name of The Holmes Hardware Company; that Mr. Holmes is the manager of both places, and that he ordered goods of plaintiff from one of its traveling salesmen, for the Pueblo Hardware Company, with the express understanding that as part consideration for such order, the plaintiff would receive and load in the car in which the articles purchased from it were loaded, the merchandise described in the answer setting up the counter-claim,

which the Holmes Hardware Company had purchased, or would purchase, from other dealers in the City of Chicago. The plaintiff accepted the condition upon which the order for The Pueblo Hardware Company was given by filling it. It also appears from the testimony that it is the custom, in the hardware trade, for jobbers in wholesale centers like Chicago, when a purchase is made from one, to load goods purchased from other dealers in the same place, in order to give the customer the benefit of car-load freight rates. The plaintiff loaded the articles in question in the car in which the goods ordered from it were loaded and shipped. In addition it appears the Holmes Hardware Company promised and agreed to pay the plaintiff for those services, at the time the request to render them was made, and thereafter paid it the sum of eleven dollars, its charges, as per a bill rendered for expenses incurred in loading these articles. Perhaps the testimony does not disclose an express agreement on the part of the plaintiff to perform these services, but it appears that the Holmes Hardware Company proposed to enter into a contract with plaintiff to receive, care for, and load the articles in question, upon the terms and conditions and for the consideration pleaded, which the plaintiff accepted by performance. This establishes mutual assent—the essential of a contract—by an offer and acceptance, which may consist of words alone, or of both words and act.

It is contended that the counter-claim is founded upon tort, for the reason that it is based upon the alleged negligence of the plaintiff. True, negligence is charged, but the liability of the plaintiff for the negligence pleaded and proved, grows out of a breach of its contract. A counter-claim may be based upon a breach

of contract, although such breach may also be a tort. 25 Ency. 584.

During the progress of the trial, it developed that the assignment of the claim of the Holmes Hardware Company against the plaintiff to the defendant was for the purpose of collection. Counsel for plaintiff in error therefore insist that the defendant was not the real owner of the claim, and that an assignment of a claim pleaded as a counter-claim will not be recognized unless the party pleading it unconditionally and absolutely owns it. We are relieved from determining this important question. It appears, as above stated, that the personnel of the two firms is identical, and that these individuals conduct the hardware business at separate places under different partnership names. When the same persons carry on the same business as partners in different places, but under different names, there is, in law, but a single partnership. *Campbell v. Colo. C. & I. Co.*, 9 Colo. 60. The assignment of the claim of the Holmes Hardware Company to the defendant was, therefore, unnecessary, for the reason that this claim, in law, belonged to the same partnership and the same parties.

In some jurisdictions it is probably the rule that unliquidated claims can not be the subject of counter-claim. What the rule should be must depend upon the construction of the provision of the Civil Code, allowing counter-claims to be set up as a defense. The object of this provision in our code is to enable parties to settle and adjust their cross-claims in a single action, and thus avoid circuity and multiplicity of suits. To this end it should be liberally construed. Our Civil Code, § 57, in designating what constitutes a counter-claim, reads: "Second; in an action arising on contract, any other cause of action arising, also, upon contract."

A claim based upon a cause of action arising upon contract is often unliquidated in the sense that the amount of the claim is not settled or adjusted. To hold that such a claim must be liquidated to render it available as a counter-claim would not only result in preventing counter-claims from being pleaded, in many instances, but would rob the code of its beneficent purpose by reading into it a qualification or limitation which is not found there, and does not impliedly belong there.

It is next urged that the counter-claim should not have been allowed because the evidence does not establish that plaintiff was guilty of such negligence or want of care in handling the goods of The Holmes Hardware Company as would render it responsible. This contention is based upon the assumption that plaintiff was a gratuitous bailee, and therefore, only required to exercise slight care or diligence. The promise is not justified from the record. We think the testimony unquestionably establishes that plaintiff was a bailee for hire, and that there was a valuable consideration for the services it undertook to perform. These services were also for the benefit of the Holmes Hardware Company, so that the case falls within the rule, that when a bailment is reciprocally beneficial to both parties, the law requires ordinary diligence on the part of the bailee, and makes him responsible for ordinary neglect.— *Story on Bailments*, § 23; *Dart v. Lowe*, 5 Ind. 131.

Ordinary care is that degree of care which an ordinarily prudent person would exercise under similar circumstances. Whether or not the plaintiff exercised this degree of care was submitted to the jury, and from the verdict returned, determined against it. The only question, then, is whether the testimony is sufficient to sustain that finding. We think it is. The goods were delivered by the firm from whom purchased upon the platform, from which they would be loaded into the car. The employes of plaintiff knew when these goods

were delivered, and of what they consisted. They were there at the time. The platform was without a roof. Plaintiff admits that it received the goods in good condition. Before they were loaded into the car it rained, and this was the cause of the damage. The bulk of the damage consisted in injury to bundles of planished iron, which were badly rusted. This kind of iron is easily injured by water, and was, therefore, packed so that when placed "right side up," the bundles are impervious to rain. The bundles containing this iron were marked on the water-proof side "Keep dry. This side up." On the opposite side they were marked: "The other side up. Keep dry." If these directions had been followed, injury to the iron could have been avoided. The goods of the plaintiff on the platform at the same time were not injured by the rain; so that it seems, from all the facts and circumstances, there was sufficient evidence from which the jury could well determine that by the exercise of reasonable and ordinary care injury to the goods could have been prevented.

Errors are also assigned on the instructions given and refused, but as they involve the same questions already considered, we do not deem it necessary to notice them in detail.

The judgment of the District Court is affirmed.

*Judgment affirmed.*

CHIEF JUSTICE CAMPBELL and MR. JUSTICE HILL concur.