## No. 11,814.

## FITZGERALD v. McDONALD.

Decided May 2, 1927.

Action for damages for fraudulent misrepresentations. Judgment for plaintiff.

*Affirmed.*

## On Application for Supersedeas.

1. APPEAL AND ERROR—*Fraud—Sufficiency of Evidence.* In an action for damages for misrepresentations, evidence reviewed and held to support findings and judgment for plaintiff.

2. TRIAL—*Facts.* A trial court as trier of the facts determines the weight and sufficiency of the evidence, has a right to draw upon the knowledge he possesses to the same extent that a jury could, and has the right to determine all the facts and circumstances surrounding the case.

3. APPEAL AND ERROR—*Fact Findings.* The conclusions of fact by the trial court supported by evidence will not be disturbed on review.

4. *Fact Findings—Conflicting Evidence.* Where the evidence is conflicting, if there is sufficient to support the judgment it will not be disturbed on review.

5. *Judgment—Facts.* On review, all questions of fact must be resolved in favor of the judgment.

6. *Judgment—Presumption.* On review all presumptions are in favor of the judgment.

7. FRAUD—*False Representations.* In an action for damages for false representations, it is held that it is wholly immaterial that plaintiff did not believe the false statements of defendant, where he was compelled to accept the statements as true in order to obtain a note wrongfully withheld from him.

8. APPEAL AND ERROR—*Court Findings.* It is of no consequence what the findings of the court are, if its conclusion and judgment are supported by competent and sufficient evidence.

*Error to the District Court of Washington County, Hon.
L. C. Stephenson, Judge.*

Messrs. PELTON & CHUTKOW, for plaintiff in error.

Mr. CHALKLEY A. WILSON, for defendant in error.

*Department One.*

MR. JUSTICE SHEAFOR delivered the opinion of the court.

DEFENDANT in error brought suit against plaintiff in error in the district court, and the parties will be referred to here as there. The action was to recover damages for false and fraudulent representations alleged to have been made by defendant to plaintiff. Trial to the court without a jury, judgment for plaintiff for $100, and for the return to plaintiff of a certain promissory note and chattel mortgage. Defendant prosecutes this writ of error and applies for supersedeas.

As defendant's principal contention is that there is a material variance between the allegations of the complaint, the evidence and the findings of the court, it will be necessary to briefly summarize them.

The third and final amended complaint alleges in substance, so far as material, that one Trevett was on or about the 19th day of December, 1922, the owner of a certain promissory note for the sum of $2,280, executed by one Pierce and his wife, and secured by trust deed; that on that date Trevett was indebted to the Farmers State & Savings Bank in the sum of $625; that prior to that date Trevett had pledged the Pierce note to the bank to secure the $625; that the note and trust deed, and the $625 Trevett note, were in the hands of defendant, who was then acting as special deputy bank commissioner; that on that date plaintiff purchased the Pierce

note from Trevett; that at that time the total indebtedness of Trevett to the bank was $625; that about that date plaintiff undertook to satisfy the pledge in order to obtain possession of the Pierce note; that defendant, who was then in charge of the bank, "in order to cheat, wrong and defraud plaintiff * * * represented to the plaintiff that the note had been transferred to some other person and was about to be retransferred; that in order for the plaintiff to secure and obtain the pledge it would be necessary for the plaintiff to transfer a certain chattel mortgage and note executed by C. C. Froman to George McDonald in the sum of $339, and in addition thereto, to pay the sum of $625 in cash and a further sum of $100 in cash"; that the value of the Froman note was $350; that the value of the Froman note and the $100 was charged by defendant as a bonus; that the plaintiff delivered the Froman note and chattel mortgage and paid the $100 to defendant; "that after the transaction was closed, the money paid, the pledge redeemed, the chattel mortgage and $100 bonus turned over according to the agreement and demand of said L. E. Fitzgerald, this plaintiff learned that the representations made by the defendant, L. E. Fitzgerald, were false, and that by reason of the false and fraudulent representations made by the said L. E. Fitzgerald, plaintiff had been damaged to the extent of $450"; that plaintiff did deliver the Froman note and mortgage, and paid the $100 to defendant believing defendant's statements and representations to be true, and relying thereon; that thereafter the plaintiff discovered that the representations so made by defendant were false; that the Pierce note and trust deed had not been sold and transferred to any other person, but that defendant had the same in his own possession; that defendant did not apply the Froman note and mortgage and the $100 to the use and benefit of the bank, but converted the same to his own use. The complaint contained all other essential allegations.

As to the evidence: Defendant, called for cross examination under the statute, testified that he had the Pierce note and mortgage in his possession personally at the time alleged, and not as special deputy bank commissioner; that it had been turned over to him six or eight months prior to that time by a representative of the Central Savings Bank & Trust Company of Denver; that the Pierce note and mortgage were collateral for the Trevett note for $625 which was owed to the Central Savings Bank; that defendant had the Trevett note for collection from that bank; that he received from plaintiff a check for $625, a check for $100, and the Froman note and chattel mortgage; that he received the check for $100 as part of the consideration for the Pierce note, and that it went to him and not to the state bank commissioner, nor to the Central Savings Bank; that he kept as his own, and still had, the Froman note and chattel mortgage; that the $625 went into the state bank commissioner's funds. There was evidence tending to show that the Pierce note was of the value of $2,280.

Plaintiff testified that he had made a deal with Trevett for the Pierce note; that he gave him a check for $625 and told him to go and get the Pierce note from defendant; that Trevett returned and said he could not get it; that defendant refused to deliver it to him and said he had sold it. Then plaintiff further testified:

"So then I went to see Mr. Fitzgerald, and he refused to turn me this paper over. He said if I hadn't made this deal he was going to deed some land over by Stoneham * * * and he was going to make quite a little money out of it * * * so I had time until about the 27th day of December. I came back and went over and seen Mr. Fitzgerald, and he said that he wouldn't turn this over unless I—he asked me what I would give him for it, to turn it back to me. I told him that I bought this and it was mine, and I wanted it, and I told him I had a note of Charley Froman for $329 and some accrued interest secured on some wheat, and if he would give me

$200 in money I would turn him over this note. No, he said, you are making $500; if you give me this note and $150 in money I will turn you back the security. So being Trevett had my money, and had deed to my land, I knew I was hooked. So I gave him the note and $100 check and immediately he opened the desk and give me the paper."

"Q. Did you believe at the time that he had disposed of the property to someone else? A. No, I didn't.

"Q. Why did you give him the additional money for this note above what the Trevett note called for? A. Well, I had a quarter section of land in this and had $50 in money that I had paid Trevett, and there was no other way I could save myself only to pay this additional as he requested."

Plaintiff further testified that about the 19th or 20th of December he went to Fitzgerald's office and told him he had purchased the paper.

"Q. What did he say? A. He told me it was too late."

"Q. What else did he say? A. He said he had already disposed of it to a party in New Raymer."

He further testified that defendant told him he had sent it to New Raymer. As to other matters, the evidence was conflicting. At the conclusion of all the testimony defendant asked for an opportunity to present his argument, when the court remarked:

"You couldn't convince me in a thousand years. Here is one of the most bare, clear-faced, unadulterated frauds that I have seen or met up with in a long, long time. This property was the property of that bank; and even if this man had not been the bank commissioner, the transaction itself showed a collusion between this defendant and the Central Savings Bank & Trust Company in Denver, who held this collateral; but moreover, he was a bank commissioner, and he was saddled with the trust. He had no right to buy any of the property of that bank, he had no right to sell any of the property of that bank without an order of the court, much less to sell the stuff to him-

self. I don't think you can twist any of the facts in this case at all to excuse the conduct of this defendant.''

Defendant then asked the court to make specific findings of fact.

''The Court: The court finds that the defendant in this case had no right or authority to purchase any of the property pertaining to the failed bank; that all of these notes mentioned here were the property of that bank; that some of them had been hypothecated to the Central Savings Bank & Trust Company of Denver, and that during the holding of said notes by that bank in Denver, the defendant herein, in. violation of his trust, claims to have purchased the same. The court finds that as a matter of fact he did not buy it; that all he did do was to write a check and keep the check until the plaintiff in this case furnished him with sufficient money to pay off the note that was held by the failed bank, and for which this collateral was given in Denver; and that even then,. this money was not transmitted to the bank in Denver, but was turned into the fund belonging to the failed bank. I find that this transaction on the part of the defendant is fraudulent in law and fraudulent in fact; and that plaintiff has been damaged by reason thereof. I find that there was such a disregard of the rights of the plaintiff as would warrant the court in rendering a body judgment against the defendant. I find that plaintiff is entitled to the Froman note and mortgage, and entitled to recover the $100 that he paid to the defendant. I think that is all. that there was involved.''

The court, however, refused to render a body judgment. We do not think there is the variance contended for by the defendant. The evidence corresponds substantially with the allegations of the complaint, and upon the conflicting evidence there was sufficient to support the findings and judgment of the trial court. We have announced, in several cases, the following principles which are applicable here: That it is fully within the province

of the trial court sitting as a trier of the facts to deter-
mine the weight and sufficiency of the evidence, and that
the trial judge has the right to draw upon the knowledge
he possesses in common with the generality of mankind
to the same extent that a jury could, and has the right
to determine, in considering the evidence, all the facts
and circumstances surrounding the case. *Mooney v. Van
Kleeck Co.,* 79 Colo. 252, 257, 245 Pac. 348; *Ver Straten
v. Worth,* 79 Colo. 30, 34, 243 Pac. 1104; that conclusions
of fact by the trial court supported by evidence will not
be disturbed on review. *Insurance Co. v. Fukushima,*
74 Colo. 236, 220 Pac. 994; that where the evidence is
conflicting, if there is sufficient to support the judgment
it will not be disturbed on review. *Jones v. Dunlap,* 78
Colo. 221, 223, 239 Pac. 989; that on review all questions
of fact must be resolved in favor of the judgment. *Boldt
v. Motor Co.,* 74 Colo. 55, 218 Pac. 743; *Lewis v. Winslow,*
77 Colo. 95, 234 Pac. 1070; that all presumptions are in
favor of the judgment. *Bank v. Denver Exchange,* 74
Colo. 212, 215, 220 Pac. 402.

It is certain from the testimony, in order that plaintiff
might obtain the Pierce note, which was only held as
collateral to the $625 note of Trevett, after that note
was paid, defendant required plaintiff to pay to him the
$100 and to turn over to him the Froman note and mort-
gage, and this he did, according to some of the testimony,
by falsely representing to the plaintiff that the Pierce
note had been sold and transferred to another party, and
would be transferred again, when in fact it had not been
transferred, but was then in possession of defendant, and
at once delivered over to plaintiff upon the above pay-
ments being made.

It is wholly immaterial that plaintiff did not believe
the statement of defendant that the Pierce note had been
transferred, the crucial point being that plaintiff was
compelled to accept that statement of defendant as true,
and to act thereon to enable him to obtain the note.

It is of no consequence what the findings of the court were, if its conclusion and judgment are supported by competent and sufficient evidence, as we think they are in the instant case.

The judgment will be affirmed.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE DENISON and MR. JUSTICE WHITFORD concur.