No. 17,950.

Mike Karras *v.* Dera Trione, et al.
(310 P. [2d] 560)

Decided April 15, 1957.   Rehearing denied May 20, 1957.

230

Mr. CHARLES S. VIGIL, for plaintiff in error.

Mr. ROBERT E. HOLLAND, for defendants in error Dera Trione and D. M. Waldman.

Miss ALICE LOVELAND, for defendant in error Thomas K. Hudson.

Mr. EDWARD PHILIP KURZ, Mr. DAVID C. BURLINGAME, for defendant in error Harry Davis. Mr. HARRY DAVIS, Pro Se.

*In Department.*

MR. JUSTICE DAY delivered the opinion of the Court.

PLAINTIFF in error was plaintiff in the trial court. We will refer to the parties as they there appeared.

The facts on material matters were not in dispute. Plaintiff brought suit on five separate causes of action against each of the defendants individually and jointly under an allegation of conspiracy. He sought damages in the amount of $30,000 on each of four causes of action and $5000 on another cause of action. Trial was to the court without a jury. At the conclusion of all of the evidence the court entered findings of fact and conclu-

sions of law and entered judgment for the plaintiff and against the defendants Dera Trione and Thomas K. Hudson for nominal damages in the amounts of $1.00 and entered judgment in favor of the defendants D. M. Waldman and Harry Davis on each of the causes of actions against them. Plaintiff seeks reversal of the judgments in favor of defendants Waldman and Davis. He also contends that the trial court erred in not awarding substantial damages in favor of plaintiff and against the defendants Trione and Hudson. No cross errors are assigned.

The circumstances which culminated in this law suit as revealed by the testimony of the various parties were as follows Plaintiff Mike Karras, in September 1951, opened a restaurant operation known as the Majestic Cafe. He leased the premises from the family of defendant Harry Davis who at all times acted in the capacity of rental agent. The lease given to plaintiff by Davis was for a period of five years. Plaintiff placed three mortgages on the fixtures and equipment, to-wit: A note and first chattel mortgage with the Citizens Savings Bank; a note and second chattel mortgage to one James Spathas, and a note and third chattel mortgage to Tony Spiros. Each of the chattel mortgages carried an assignment of the lease so that whoever became the owner of the fixtures also became the owner of the lease on the premises. These assignments were made without the knowledge or consent of the landlord.

In December 1951, plaintiff's debts to general creditors had amounted to the sum of $32,000. In an attempt to get out of the operation, plaintiff entered into a "Management Agreement" with the defendant Dera Trione. It was a strange type of agreement. By its terms the defendant Trione became the "Manager" of the restaurant, but personally assumed the $32,000 in obligations to the general creditors and agreed to pay the secured indebtedness on the three chattel mortgages, plus the rent on the premises in the amount of $400 a month,

plus $200 a month net to Mike Karras. Defendant Trione further agreed that all indebtedness incurred from and after the date of the agreement would be her personal obligation. Everything was to be in the name of Mr. Karras. If Trione obtained a liquor license, that was to be Karras' also. Defendant Trione was given a power of attorney by Karras giving her authority to renegotiate in the name of and on behalf of Karras any contracts of purchase, or any payment contracts which Karras was obligated to make either on the debts or chattel mortgages. If defendant Trione were successful in payment of all of these obligations, then, by the agreement, she had the option, within one year from the date of the liquidation of all of the debts, to purchase the premises from Karras for the sum of $5000. The agreement provided that if defendant Trione became delinquent in the payment of salaries, rent or the chattel mortgage with Citizens Savings Bank, Karras had the right of immediate re-entry upon giving defendant Trione three days notice and her failure to rectify the delinquencies. The agreement also provided that defendant Trione was "to have absolute right to quit as manager of said cafe upon giving 10 days notice in writing" addressed either to plaintiff, his attorney, or his agent.

In the fall of 1952, after almost a year of operation under the "Management Agreement," defendant Trione was no longer able to continue the operation. The testimony is that she was unable to pay the rent for December 1952; payments on the chattel mortgages were in default; withholding, social security and sales tax were due and unpaid; unpaid open accounts incurred in the business had accumulated. With the restaurant in that state of affairs, defendant Trione contacted her attorney, defendant Hudson, who notified plaintiff Karras, his attorney, and his agent to "do something quick." In the meantime defendant Hudson, with his own funds, paid the December rent and water bill and paid delinquent sales tax to the state of Colorado, in the amount of $200.

In December the restaurant was closed and the locks were changed by the defendant Hudson because, as he testified, so many of the employees had keys to the premises. Defendant Hudson refused to turn over the keys to plaintiff Karras until he was reimbursed for the $660 which he had paid out for the December rent and delinquent sales taxes. In the meantime plaintiff Karras had done nothing to protect himself. The chattel mortgages were delinquent, and the defendant D. M. Waldman purchased at least two of them and either paid off or assumed the first chattel mortagage to the Citizens Savings Bank. Waldman became the owner of the fixtures and the lease on December 31, 1952, by foreclosing on the chattel mortgages which he owned.

The defendant Davis cancelled plaintiff Mike Karras' lease, consented to the acquisition of the assigned leases by defendant Waldman, and entered into new lease agreements with Waldman.

Thus it will be seen that defendant Trione was in a relationship of manager of Karras' restaurant with the right to purchase the same if she managed the property sufficiently well to get it out of debt and pay Karras $5000 in the bargain. Defendant Hudson was Trione's attorney; defendant Davis was agent for the landlord, and defendant Waldman was a purchaser of the chattel mortgage. Counsel for plaintiff does not contend that the court committed any errors of law. Therefore, the judgment of the court rests on the facts alone, and if sustained by the evidence will not be disturbed.

We dispose first of the complaint that the court erred in entering judgment in favor of defendants Waldman and Davis. We think the judgment of the trial court was correct. Defendant Waldman purchased the mortgages as he had a right to do, and no liability attaches to him therefor. It also was legally proper for him to foreclose the delinquent mortgages. As to Davis, it is clear from the undisputed evidence that plaintiff had no right, without the consent of the landlord, to make the various

assignments of the leasehold as provided in the three chattel mortgages, and his doing so violated the express terms of the lease which required consent of the landlord before assignment. Nevertheless, defendant Davis as agent for the landlord agreed to cancel the lease of plaintiff Mike Karras and agreed to new leasing arrangements with the defendant Waldman. There was some testimony in the record, undisputed, that a $400 pre-payment deposit on the lease to secure the payment thereof was due to Mr. Karras. The deposit, however, was held by the owners of the premises who were not parties to the suit. The repayment of the rent deposit was not the personal obligation of the defendant Davis as agent of the owners of the property. We perceive no error in the judgment in favor of Waldman and Davis.

Plaintiff attempts to recover from the defendant Trione by virtue of C.R.S. '53, 58-1-26, and by reason of the alleged breach of the agreement of December 1951. Plaintiff did not bring an action against the defendant Trione under the forcible entry and detainer statute, C.R.S. '53, 58-1-1, et seq. In an action for treble damages under C.R.S. '53, 58-1-26, a condition precedent is a favorable judgment in an action brought to recover possession under the provisions of chapter 58. 58-1-26 provides as follows:

"Plaintiffs' damages.—If the plaintiff shall recover *in any action brought under the provisions of this article,* he shall be entitled to recover treble damages, with costs of suit, against the person found guilty, in a separate action for any damages or injury he shall have sustained during the time he shall have been deprived of the possession of the premises, by reason of any forcible entry, forcible detainer, or unlawful detainer, of the same by such defendant, except in cases arising under subsections (6), (7), (8) and (9) of section 58-1-4. In all cases where an appeal shall have been taken by the defendant in the original action, and the judgment appealed from shall have been affirmed, and an undertaking shall have

been given upon the taking of such appeal, the action provided for in this section may be maintained as well against the sureties in such undertaking as against the principal therein." (Emphasis supplied.)

There could be no liability for breach of the agreement because Trione had an "absolute right to quit as manager upon giving the plaintiff 10 days notice." Although the agreement provided the notice should be in writing, that requirement may be deemed waived where plaintiff does in fact receive the notice and acts thereon.

■ In the month of December 1952, defendant Hudson, as attorney for Trione, notified Karras and his attorney and agent that his client was no longer able to continue. In the same month plaintiff's attorney was in contact with the defendant Hudson. By the end of the month of December, Karras had obtained the consent of defendant Davis to cancellation of his obligation under the lease, he had then lost the fixtures by reason of the foreclosure. Plaintiff made no attempt to redeem from the foreclosure and could not have reopened the restaurant. The failure of Trione to turn over the keys in the face of all of the confusion — with lien holders and the landlord and other people demanding possession — was at most, as the court found, a technical withholding from Karras. The finding of the trial court that Karras sustained only nominal damages is fully supported by the evidence and will not be disturbed. If the defendant Hudson were to be liable at all, it would be jointly with the defendant Trione for his participation as agent and attorney for Trione. There was some attempt to charge Hudson with being attorney for plaintiff Karras and therefore liable for the breach of the relationship of attorney and client. The evidence does not sustain this in any part, it being very apparent that Karras at all times pertinent to the issues was represented by George Francis, a member of the Colorado Bar, and by one Andrew Gates as his attorney in fact. Defendant Hudson was attorney for Trione and at all times acted for her and in

her interests. The court found that defendant Hudson, acting under the directions of the defendant Trione, should not have withheld the keys from plaintiff Karras for the number of days involved, but the findings of the court that this did not cause the plaintiff to suffer any damage is supported by the evidence and the finding and judgment will not be disturbed.

The judgment of the trial court is affirmed.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE KNAUSS and MR. JUSTICE SUTTON concur.