**BRUSH CREEK AIRPORT, L.L.C., a Colorado limited liability company, and Richard A. Landy, Plaintiffs–Appellees and Cross–Appellants,**

v.

**AVION PARK, L.L.C., a Colorado limited liability company, and Carlo Cesa, Defendants–Appellants and Cross–Appellees.**

No. 01CA1310.

Colorado Court of Appeals, Div. III.

July 18, 2002.

Wilderson, O'Hayre, Dawson, McGinty & Frazier, P.C., Michael C. Dawson, Robert M. O'Hayre, Gunnison, Colorado, for Plaintiffs–Appellees and Cross–Appellants.

Law Office of Pete Cordova, P.C., Pete Cordova, Salida, Colorado; Law Office of M. Stuart Anderson, P.C., Stuart Anderson, Salida, Colorado, for Defendants–Appellants and Cross–Appellees.

Opinion by Judge DAVIDSON.

In this action involving the parties' respective rights in an airport runway, terminal, and hangar, defendants, Avion Park, L.L.C. and Carlo Cesa (collectively, Avion Park), appeal from the trial court's judgment on various claims and counterclaims involving plaintiffs, Brush Creek Airport, L.L.C. and Richard A. Landy (collectively, Brush Creek). Brush Creek cross-appeals the trial court's award of attorney fees to Avion Park. We affirm in part, reverse in part, and remand.

Brush Creek is a developer of a multi-unit subdivision in Crested Butte, and Landy is its managing member. Cesa is a member of Avion Park. In 1996, Avion Park purchased commercial lot C–2 in Brush Creek's subdivision under a sales contract. The lot abuts a private runway that runs diagonally across a larger parcel owned by Brush Creek, and Brush Creek granted Avion Park a nonexclusive easement for use of the runway. A terminal and a hangar building located on the lot were excluded from the sales contract, but Avion Park leased the buildings from Brush Creek by a separate lease contract.

After the lease term ended, the parties disagreed about removal of the buildings. A separate dispute arose over Brush Creek's plan to extend a road over a portion of the runway to access and develop the southern portion of the subdivision. Brush Creek asserted that it had retained an easement reserved by its predecessor in interest that allowed it to build the road crossing the runway.

Brush Creek filed this action for replevin of the two buildings and breach of the lease contract. Avion Park filed counterclaims including breach of the sales contract, breach of easement, trespass on the easement, fraud, misrepresentation, fraudulent concealment, breach of the Colorado Common Ownership Interest Act (CCOIA), and claims for declaratory and injunctive relief to require Brush Creek to maintain the runway at its current length and not construct the proposed road. Brush Creek then added claims for, inter alia, breach of the sales contract, interference with easement and trespass, and for declaratory and injunctive relief.

As relevant here, the trial court awarded Brush Creek temporary and permanent possession of the hangar and terminal buildings and also awarded it attorney fees on its breach of lease claim. The trial court found that Avion Park took its easement in the runway subject to Brush Creek's retained easement for access to the southern portion of the subdivision and subject to the county's

right to regulate safety. The court also found that Brush Creek had not violated the CCOIA. The trial court accordingly awarded Brush Creek nominal damages of $1 on its interference with easement and trespass claims and rejected Avion Park's fraud, misrepresentation, and trespass claims. However, the court also determined that rescission was the appropriate remedy for Avion Park's breach of sales contract claim, ordering the return of the purchase price and awarding attorney fees. Finally, the trial court found that Avion Park's claims for breach of easement, trespass on the easement, and declaratory and injunctive relief were rendered moot by the rescission of the sales contract.

On this appeal and cross-appeal, we reverse those parts of the judgment ordering rescission, awarding attorney fees to both parties, and dismissing as moot Avion Park's claims for breach and trespass of easement and for declaratory and injunctive relief. Otherwise, we affirm the judgment.

## I.

### Replevin and Breach of Lease Claims

Avion Park first contends that the trial court erred in awarding Brush Creek possession of the hangar and terminal buildings and attorney fees. We disagree as to possession, but agree as to the fees.

### A.

#### Possession

■ The lease provided that Avion Park could terminate it on ninety days written notice and that if Brush Creek failed to remove the buildings within the ninety days, the buildings would become the property of Avion Park.

Avion Park admits that it did not give written notice of termination to Brush Creek, but contends, citing *Karras v. Trione*, 135 Colo. 229, 310 P.2d 560 (1957), that written notice was waived because Brush Creek had actual notice that Avion Park wanted the buildings removed, and Brush Creek was acting on that notice. Alternatively, Avion Park contends that Brush Creek's failure to entirely remove the buildings by the court-ordered deadline entitles Avion Park to possession. We disagree with both contentions.

■ A party may not rely on the failure of a contract condition if that party contributed to its failure. *See Dupre v. Allstate Ins. Co.,* — P.3d —, 2002 WL 1220823 (Colo.App. No. 01CA0630, June 6, 2002).

Here, the trial court found that Avion Park's actions "made the removal at best more difficult, if not impossible." Avion Park's argument to the contrary notwithstanding, this finding was supported by the evidence, including testimony that when Landy came to inspect the hangar before removing it, Cesa would not allow him to remain on the property and made various threats against him. Thus, even if the written notice provision had been waived and a ninety-day period had begun to run, the trial court did not err in concluding that Avion Park was not entitled to the buildings.

### B.

### Attorney Fees Awarded to Brush Creek

■ Avion Park next contends that the trial court erred in determining that Brush Creek's replevin claim arose out of the sales contract and in awarding attorney fees on that claim pursuant to the terms of the sales contract. We agree.

The lease contract contained no attorney fees provision. However, the sales contract provided: "If any action or proceeding is brought which arises out of this agreement, its performance, or breach, the prevailing party, in addition to any other rights and remedies, shall be entitled to costs and expenses incurred, and reasonable attorney's fees." The sales contract also provided: "[Avion Park] acknowledges that the hangar located on the Property is excluded from this sale. At closing, [Avion Park] and [Brush Creek] shall enter into a lease agreement for the hangar which shall provide, among other things, for at least the following [enumerated provisions nearly identical to some of the provisions in the lease agreement]." A similar provision was included regarding the terminal building.

While reciting many of the terms of the lease, the sales contract merely required the parties to enter into a lease containing those terms. After the parties did so, the obli-

gations under the sales contract relating to the buildings were completed and the lease contract controlled. The sales contract does not state that the contemplated lease is to be incorporated into the sales contract, or vice versa.

Brush Creek argues that *Agritrack, Inc. v. DeJohn Housemoving, Inc.*, 25 P.3d 1187 (Colo.2001), provides authority for importing the attorney fees clause from the sales contract to the lease. However, *Agritrack* involved an implied contract for work performed in addition to that called for in an express contract, which contained an extremely broad attorney fees clause. Here, there are two distinct, express contracts. Only the lease was breached, and it does not provide for attorney fees. Hence, we conclude that the trial court erred in awarding them.

## II.

### CCOIA Claims

Avion Park next contends that the trial court erred in concluding that Brush Creek had not violated the CCOIA. Avion Park specifically asserts that the runway was dedicated as a common area in the declaration of restrictions for the subdivision and on the plat recorded with the county and that, therefore, Brush Creek's failure to fully depict the runway and the retained easement across it violated several provisions of the declaration and the CCOIA, including: § 38–33.3–205(1)(m), C.R.S.2001 (declarations must include recording data for included easements); § 38–33.3–209(2)(b), C.R.S.2001 (plat must include locations and dimensions of existing improvements); § 38–33.3–209(2)(e), C.R.S.2001 (plat must show description of included easements); and § 38–33.3–113, C.R.S.2001 (obligation of good faith imposed on duties under CCOIA). We disagree.

Avion Park relies, in part, on the fact that a portion of the runway appears on the plat for the first filing. However, while that plat states that Brush Creek "hereby dedicate[s] and convey[s] to the owners of lots, tracts or parcels within this subdivision, but not to the public at large, the common right to use streets, alleys, roads and other areas as shown hereon," the runway is not included within the legal description of "this subdivision." The legal description states only that the included property is bordered by the runway right-of-way, and the plat does not show the entire width or length of the runway.

Avion Park alternatively contends that, even if the runway were not shown on the plat, the declaration of restrictions for the development, recorded in 1994, also dedicates the runway as a common area and bars Brush Creek from altering the runway. Again, we disagree.

The preamble to the declaration describes the entire large parcel owned by Brush Creek, with exceptions not relevant here, and states that Brush Creek "intends to develop its property above described, as a residential-commercial development centered around the existing airstrip, with the capability of providing fly-in, fly-out service to the development" and that Brush Creek "intends that its Land shall be developed as a staged development, including residential lot sites, multi-family living sites, service businesses, lodging facilities, and an equestrian ranch which will be a residential community affording its residents immediate use of aviation facilities."

However, the declaration provides that it is applicable only to parcels specifically platted by Brush Creek:

> Such parcels within the Land which the Declarant may hereafter subject to this Declaration by filing one or more Plats for record with the Gunnison County Clerk and Recorder, it being the intent of the Declarant to encumber hereunder parcels of land (Subject Land) within the property described in the PREAMBLE and such other contiguous lands which the Declarant may acquire hereafter, as stages of its plan of development are realized through the subdivision process. As Subject Land is platted by the Declarant from time to time and becomes subject to the terms of this Declaration, this Declaration shall be considered to be a part of any and all conveyances, transfers, leases, mortgages, trust deeds and other documents affecting all or any part of such Subject Land whether or not specifically set forth in such documents.

Elsewhere in the declaration, Brush Creek reserved certain development rights, including "the right to create units (Sites) and common elements (Common Areas and Facilities) as part of Declarant's staged platting process" and "the right to withdraw any part [of the Land] from its plan of development which has not become Subject Land."

Avion Park particularly relies on Article 14.11(f) of the declaration, located in the section containing disclosures required by the CCOIA, which states: "The Common Areas and Facilities are described in the Plats; however, generally, they consist of the airport runway, the roads, the recreational bike paths and pond areas and the water system."

■ However, "[r]estrictive covenants must be construed as a whole and interpreted in view of their underlying purposes, giving effect to all provisions contained therein." *Lookout Mountain Paradise Hills Homeowners' Ass'n v. Viewpoint Assocs.*, 867 P.2d 70, 75 (Colo.App.1993).

Reading the declaration as a whole, we conclude that the runway was not dedicated as a common area subject to the declaration. While Article 14.11(f) states that the runway is a common element, it also states that common elements must be shown on a plat, and the declaration defines the term "common areas" as "any area within the Land which has been conveyed by the owner thereof to the Association and accepted thereby, or any areas designated as Open Space or Common Area on a Plat." The runway had not been conveyed to the homeowners association nor, as discussed, had the runway been shown as a common area on the plat for the first filing. Thus, the runway was not "Subject Land" under the provisions of the declaration, and only the reserved development rights are applicable.

Given our conclusion that the runway was not a dedicated common area subject to the declarations, the trial court did not err in denying Avion Park's CCOIA claims, most of which were based on a failure to depict the runway and the retained easement on the plat.

■ Avion Park's claim for breach of § 38–33.3–209(2)(a), C.R.S.2001 (requiring plats to show a general schematic plan of the

entire common interest community), was not raised during the trial. Therefore, we will not consider it. *See Minto v. Lambert*, 870 P.2d 572, 575 (Colo.App.1993)("In the absence of unusual circumstances, issues raised in the pleadings but not presented at trial will not serve as a basis for review.").

### III.

### Breach of Sales Contract and Related Claims

Avion Park next contends that the trial court erred in concluding that there had been no meeting of the minds and in awarding rescission of the sales contract as a remedy for its breach of contract claim. It also contends that the trial court erred in concluding that Avion Park's claims for trespass and interference with easement and for declaratory and injunctive relief were moot and that Brush Creek's retained easement over the runway was not extinguished by merger. In its cross-appeal, Brush Creek contends that the trial court erred in awarding attorney fees to Avion Park on its breach of contract claim after finding that the sales contract should be rescinded. We conclude that further proceedings are required to determine whether the easement across the runway was extinguished, but otherwise agree with both parties' contentions.

### A.

### Rescission: Meeting of the Minds as to the Easement

■ Regarding Avion Park's runway easement, the sales contract provides:

At closing, Seller shall execute and cause to be recorded a covenant respecting the Airplane Landing Strip adjacent to the Property which dedicates the Landing Strip to that use in perpetuity for the benefit of the Property which would permit Buyer to enforce the continuation of such use of the Landing Strip.

The easement executed at closing pursuant to that section of the sales contract states: Brush Creek ... ("Grantor"), hereby grants a nonexclusive easement over the property described in Appendix A ("Ser-

vient Property") to Avion Park … to use the Servient Property as a working airplane landing strip or runway for the benefit of … Lot C–2 … ("Dominant Property"), and Grantor hereby dedicates the Servient Property to be used as an airplane landing strip or runway, including take-offs, landing, taxiing, and other ordinary uses of an airport runway, for the benefit of the Dominant Property…. Such Easement and Declaration shall not exempt Users from compliance with any reasonable rules of use of the Servient Property, established by the owner or operator of the Servient Property, that do not substantially infringe on the right of Users to use the Servient Property.

Grantor hereby covenants that the Servient Property shall be reasonably maintained in an open and usable condition, and that the Servient Property shall not be closed, changed in use or character, or blocked (except for necessary and reasonable maintenance).

This Easement and Covenant shall run with the land and shall be in perpetuity.

The legal description contained in Appendix A to the easement included property beyond the boundaries of the existing runway, and the parties refer to the parcel described as the "runway envelope."

As measured in one direction, the runway envelope is approximately 4700 feet long, but the parties agree that, as originally constructed, the runway was approximately 4500 feet long. A feasibility study submitted with the original application for county approval of the airport was based on a runway length of 4000 feet, and a subsequent sketch plan submitted to the county for the entire subdivision also showed the length of the runway as 4000 feet and showed the proposed road crossing the northern portion of the parcel. Cesa admits that he was shown these documents and testified that the proposed road was the reason that he sought the easement over the runway. Cesa was also shown sales brochures for the subdivision that referred to either a 4500—or 4700–foot airstrip.

In analyzing Avion Park's breach of contract claim, the trial court noted that "[f]rom the marketing brochures and other material provided, [Avion Park] could reasonably have concluded that the runway was in fact 4,700

feet long, was open year round, and that the runway would not be utilized for parking vehicles or planes or grazing livestock," but also found that Avion Park did not object to the title insurance commitment or policy, which evidenced the existence of a retained easement across the runway. The court then concluded, "[T]here was not a meeting of the minds with respect to a central issue in this agreement, that is the length, scope and use of the runway landing strip. Accordingly, the Court determines that rescission is the appropriate remedy." The trial court awarded attorney fees to Avion Park in conjunction with this claim.

 When there is no mutual assent to a material term of a contract, rescission is the proper remedy. See *Bejmuk v. Russell*, 734 P.2d 122 (Colo.App.1986).

> The general rule is that when parties to a contract ascribe different meanings to a material term of a contract, the parties have not manifested mutual assent, no meeting of the minds has occurred, and there is no valid contract. However, an exception to the general rule is observed when the meaning that either party gives to the document's language was the only reasonable meaning under the circumstances. In such cases, both parties are bound to the reasonable meaning of the contract's terms.

*Sunshine v. M.R. Mansfield Realty, Inc.*, 195 Colo. 95, 98, 575 P.2d 847, 849 (1978) (citation omitted). Indefiniteness in a term that would otherwise render the contract unenforceable for failure of mutual assent may be cured by subsequent performance. See *Dreazy v. North Shore Publ'g Co.*, 53 Wis.2d 38, 44, 191 N.W.2d 720, 723 (1971)("Where it is apparent that the intent of the parties was to enter into a contract, the contract should not fail for indefiniteness if the conduct of the parties will reasonably supply the omissions."); cf. *Michigan Stove Co. v. Pueblo Hardware Co.*, 51 Colo. 160, 116 P. 340 (1911).

Here, the contract required Brush Creek to execute a covenant dedicating "the landing strip to that use in perpetuity." This limited description injected indefiniteness into the sales contract because, prior to any perfor-

mance, Brush Creek's interpretation that "the landing strip" meant only the 4000 feet shown in the original application and subsequent sketch plan submitted to the county and Avion Park's interpretation that "the landing strip" meant the existing 4500-foot runway were both arguably reasonable.

However, we conclude that the indefiniteness was cured when the parties executed an easement pursuant to the sales contract that contains substantially more descriptive language. The easement covers "the property described in Appendix A," which includes the legal description of the entire runway envelope, and dedicates that property "to be used as an airplane landing strip or runway, including take-offs, landing, taxiing, and other ordinary uses of an airport runway."

The parties agree that the easement provided for continued use of at least some portion of the runway envelope as a runway. Avion Park contends that the easement grants it the right to use the 4500-foot existing runway and that any subsequent use of the runway envelope by Brush Creek must not be inconsistent with that use. Brush Creek's position appears to be that only 4000 feet of runway was originally approved and that, because at least 4000 feet of runway would remain, and the county approved the road for safety so long as the runway was shortened, it may build the proposed road on any other portion of the runway envelope.

However, neither of these positions is consistent with the language of the easement actually granted, which describes the entire runway envelope but also allows for reasonable rules of use that do not "substantially infringe" on Avion Park's right to use the property. The easement does not refer to either a 4000—or 4500-foot length or describe the existing runway or the approved runway, and it is not ambiguous.

Based on the unambiguous language of the easement, we disagree with the trial court that there was no meeting of the minds on the length, scope, and use of the runway. To the contrary, the parties here attached the same meaning to a contractual term—the legal description of the runway envelope appearing in the easement—and only later disagreed as to its meaning. Thus, we conclude

that the trial court erred in ordering rescission of the sales contract.

## B.

### Parties' Respective Rights in Easement

Avion Park next contends that the trial court erred in concluding that its claims for trespass and interference with easement and for declaratory and injunctive relief were moot based on the rescission order and in concluding that the retained easement across the runway was not extinguished by merger. We agree with the first contention and conclude that further proceedings are required on the merger issue.

### 1.

### Mootness

Reversal of the rescission remedy leaves the rights of the parties in the easement unresolved. The language of the easement determines the scope of Avion Park's rights. However, Brush Creek, as owner of the servient estate, also retained certain rights in the runway, namely to use the runway envelope in a manner that does not unreasonably interfere with the easement granted, as relevant here, to Avion Park. See *Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1234 (Colo.1998)(owner of servient estate "enjoys all the rights and benefits of proprietorship consistent with the burden of the easement"); *Skidmore v. First Bank*, 773 P.2d 587 (Colo.App.1988)(grantor has right to use nonexclusive easement in common with grantee). Brush Creek also retained the right to impose reasonable rules on the runway envelope that do "not substantially infringe on the right of Users to use the Servient Property." The trial court also determined that Avion Park took the easement subject to the county's authority to regulate safety.

The trial court found that shortening the runway to accommodate the road was consistent with enhancing overall safety, but that "any shortening of this runway will reduce the number of types of planes which can utilize this runway, which would have an adverse impact on any aviation-related business." The trial court also determined that

"a runway was contemplated together with an additional use for road access," and in its briefs on appeal, Avion Park appears to concede that, had the county not required a shortening of the runway, an access road might have been consistent with its easement.

However, the trial court did not explicitly determine whether Brush Creek's proposed road, with the required shortening of the runway, and the occasional appearance of parked vehicles and planes or stray animals on the runway, are uses consistent with Avion Park's rights in the easement. Nor did the trial court determine whether shortening the runway to accommodate the proposed road was a "reasonable rule" that did not "substantially infringe" on Avion Park's rights.

Also unresolved is the effect of a third easement held by a neighbor (Lacy). In 1975, Landy granted Lacy a nonexclusive easement along the western edge of the large parcel. The easement connects the Lacy property south of the large parcel to a road at the north end of the large parcel, which leads to a county road. At the northwest corner of the large parcel, the Lacy easement crosses the runway envelope. The record indicates that the crossing of the proposed road and the runway envelope may coincide with the Lacy easement.

As owner of the runway envelope and the large parcel crossed by the Lacy easement, Brush Creek had the right to use that easement in a manner consistent with the rights granted to Lacy. *See Skidmore v. First Bank, supra.* However, it is not clear whether the trial court determined that Brush Creek's right to build the road was based on its reserved easement, the Lacy easement, or both. Thus, further proceedings are required on Avion Park's claims of trespass on the easement, breach of easement, and for declaratory and injunctive relief, and, therefore, the trial court erred in concluding that these claims were moot.

## 2.

### Merger

The trial court determined that Brush Creek's easement across the runway was not extinguished by merger and that Avion Park's rights in the runway easement were therefore subject to that retained easement. We conclude that further proceedings on this issue are also required.

The relevant history of the property and easements is as follows: Landy purchased a 287–acre rectangular parcel of land in 1972, and in 1975, he conveyed the runway envelope to one Rouse. The county thereafter approved an airport on the site, and Rouse constructed an approximately 4500–foot runway on the parcel. The runway envelope runs from the northwest corner to the southeast corner of the larger parcel and completely bisects it. In the conveyance of the runway envelope, Landy reserved three easements for ingress and egress to the separated portions of the larger tract, which the parties refer to as the "pocket easements" or the "Landy easements."

After several intermediate conveyances, Brush Creek obtained the runway envelope in 1991. In 1992, Landy conveyed the rest of the 287–acre parcel to Brush Creek. In the plans for continued development of the subdivision, Brush Creek relied, at least in part, on one of the Landy easements for its authority to build the proposed road across the runway.

█ As it pertains to easements, the doctrine of merger provides that when the land burdened by the easement and the land benefited by the easement come into common ownership, the need for the easement is destroyed and the easement is extinguished. *See Salazar v. Terry,* 911 P.2d 1086 (Colo. 1996).

█ The doctrine of merger as applied to easements is different from that as applied to mortgages, and, contrary to the trial court's conclusion, the intent of the common owner is relevant only in the latter case. *See Salazar v. Terry, supra.* When common ownership of the dominant and servient estates occurs, "the easement is terminated to the extent that the ownership of the servient estate permits the uses authorized by the easement." *Freeman v. Rost Family Trust,* 973 P.2d 1281, 1284 (Colo.App.1999).

█ However, an easement will not terminate by merger if others own outstanding interests in the dominant or servient estates.

*See* Restatement (Third) of Property: Servitudes § 7.5 cmt. d (2000); *see also Will v. Gates,* 89 N.Y.2d 778, 658 N.Y.S.2d 900, 680 N.E.2d 1197 (1997)("Where, however, only a portion of the dominant or servient estate is acquired, there is no complete unity of title and there remain other dominant owners whose rights are inviolate. The easement rights of these owners cannot be extinguished by a conveyance to which they are not a party.").

■ To effect extinguishment by merger, the common ownership of both the dominant and servient estates must be absolute, not defeasible or determinable, and coextensive, rather than owned in different fractions. *See* Emory Washburn, *A Treatise on the American Law of Easements and Servitudes* ch. 5 § 1, at 685 (4th ed. 1885); *see also Lewitz v. Porath Family Trust,* 36 P.3d 120 (Colo.App.2001)(common ownership of dominant and servient estate will not result in merger where one estate is subject to a security interest).

### a.

### Lacy Easement

■ Brush Creek contends that the Lacy easement along the western edge of the large parcel was an *outstanding* interest sufficient to prevent termination of the Landy easements by merger. We disagree.

The Lacy easement does not prevent Brush Creek's ownership of the dominant estate from being absolute. *See Skidmore v. First Bank, supra,* 773 P.2d at 589 ("An easement does not carry any title to the land over which it is exercised and the easement does not work a dispossession of the landowner.")(quoting *Barnard v. Gaumer,* 146 Colo. 409, 361 P.2d 778 (1961)). Moreover, the Lacy easement does not grant Lacy any right to use the Landy easements. Therefore, Lacy's easement is not an additional dominant estate benefited by the Landy easements.

### b.

### Agricultural Lease

■ Brush Creek also relies on an agricultural lease of the undeveloped property on either side of the runway envelope to support its argument that no merger oc-

curred. While a leasehold interest may be sufficient to postpone the extinguishment of an easement by merger, it is not clear from the record whether that is the case here.

■ Common possession of the dominant and servient estates is not required to cause merger. *See* John Leybourn Goddard, *A Treatise on the Law of Easements* ch. V § 1, at 537 (5th ed. 1896)("Unity of seisin for estates in fee will in every case cause easements to be extinguished, and it matters not that there has been no unity of possession of enjoyment, as, for instance, that one tenement has been in possession of a tenant during the whole period of unity, for, notwithstanding that, extinction will be effected.").

■ However, where the easement is necessary to the enjoyment of the leasehold interest, then extinguishment will not occur during the period of the lease. *See* W.J. Byrne, *A Treatise on the Law of Easements* part V, at 460 (10th ed. 1925)("[W]here A., the owner in fee of the dominant tenement, granted a lease thereof to X. and subsequently sold his reversion in fee to B., who was the owner in fee in possession of the servient tenement, it was held in effect that during X.'s term the easement ... continued, there being no extinguishment. A. could not derogate from his grant so as to interfere with X.'s right to the easement, nor could B. standing in the place of A."); *see also Washburn, supra,* at 688 (where "easement was necessary to the enjoyment of the first [leased property], the mere ownership of both [leased properties] in reversion by one and the same man did not create a unity of title and possession to the two in him").

Here, while the lessee testified that he had leased the large parcel for approximately eighteen years, the only lease agreement in the record is dated after the two parcels came into common ownership and specifically excludes the runway. The lessee also stated that, prior to 1996, he had accessed the two sides of the large parcel by crossing at a cattle guard, rather than at the north end of the runway. The record does not indicate whether the lease in effect at the time of Landy's conveyance of the large parcel to Brush Creek contained the same terms as the subsequent lease, and, although the testi-

mony indicates that the cattle guard crossing used in 1992 was in a different location than the Landy easement, the record does not disclose its precise location. Thus, whether the Landy easement was necessary for the enjoyment of the agricultural lease and postponed any merger must be resolved by the trial court on remand.

### C.

### Attorney Fees Awarded to Avion Park

On cross-appeal, Brush Creek contends that the trial court abused its discretion in awarding attorney fees to Avion Park after granting rescission on Avion Park's breach of contract claim.

In light of our conclusions that the easement was a separate agreement, that rescission of the sales contract was not an appropriate remedy, and that further proceedings are required to resolve the disputes relating to the breach of easement, we agree that the award of attorney fees was not warranted.

### IV.

### Fraud and Misrepresentation Claims

■ Avion Park next alleges that Brush Creek fraudulently misrepresented the length of the runway and its intentions regarding the proposed road and contends that the trial court erred in determining otherwise. We disagree.

■ A trial court's judgment will not be reversed if it is supported by the evidence. *See Fitzgerald v. McDonald,* 81 Colo. 413, 255 P. 989 (1927).

■■ Claims for fraud or misrepresentation require reasonable reliance on the statements. *See* CJI–Civ. 4th 19:1 (Cum. Supp.2001). Reliance is not justified when the party is on inquiry notice: "If the [party] has access to information that was equally available to both parties and would have led to discovery of the true facts, [that party] has no right to rely upon the misrepresentation." *Balkind v. Telluride Mountain Title Co.,* 8 P.3d 581, 587 (Colo.App.2000).

Here, while the trial court found that Avion Park could reasonably have believed,

based on certain brochures, that the runway was 4700 feet long, it also found that Avion Park took the easement subject to the declaration, the Lacy easement, and the county's right to impose safety requirements. Cesa admitted that prior to closing, Brush Creek had shown him, or he had obtained for himself, various other documents showing a 4000–foot runway and the location of the proposed road. The sales contract itself includes an acknowledgement that Brush Creek was planning additional development and that the runway was only a planned amenity. Thus, the trial court's judgment on these claims was supported by the evidence.

### V.

### Brush Creek's Interference and Trespass Claims

■ The trial court found for Brush Creek on its interference with easement and trespass claims based upon Avion Park's placing rocks on the edge of the runway to block traffic. Avion Park contends that it was privileged to block vehicular access to the runway because Brush Creek had failed to maintain the runway in an open and usable condition. However, Avion Park provides no authority to support this position and we find it unpersuasive.

Based on our resolution of this matter, we need not address any remaining issues raised by the parties.

Those portions of the judgment relating to the breach of contract claim, awarding attorney fees to the parties, and finding Avion Park's claims for breach and trespass of easement and for declaratory and injunctive relief moot are reversed, and the case is remanded for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.

Judge JONES and Judge STERNBERG *, concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2001.