87 N.J. Super. 177 (1965)
208 A.2d 434
URBAN FARMS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
ARTHUR J. SEEL AND CHARLOTTE SEEL, HIS WIFE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 16, 1965.
*178 Messrs. Gassert & Murphy, attorneys for plaintiff (Mr. Thomas S. Murphy appearing).
*179 Mr. Sebastian Gaeta, attorney for defendants.
PASHMAN, J.S.C.
This is an action in which plaintiff corporation seeks to enjoin defendants husband and wife from violating two restrictive covenants. One covenant is found only in a written contract of sale between the parties, and the other in both the contract and the deed conveying certain property from plaintiff to defendants.
Urban Farms is a model community for our affluent society. The area, owned and operated by plaintiff corporation, consists of approximately 240 one-family homes, all of which have a very substantial value. With permission of counsel, I inspected the premises in question. Urban Farms is located in the Borough of Franklin Lakes and extends over approximately 3000 acres, with 500 acres presently being developed. Plaintiff contends that it is doing everything within its power to keep the community beautiful to the sight and wholesome in environment. To achieve this end, plaintiff claims it has been necessary to impose restrictive covenants binding on the residents of Urban Farms. Defendants, who own property in the community, counter that many of these covenants have only one purpose  to enlarge plaintiff's corporate pocketbook through an interlocking realty company.
On August 1, 1961 defendants entered into a written contract to buy a certain lot for $12,500 from plaintiff corporation. The sales contract contained a typewritten provision, inserted between the "In witness whereof" clause and the signatures on the printed contract, stating:
"Supplementing Clause No. 2 in Schedule `A' of this contract, it is understood and agreed that any residence erected on the within described premises will be built by a Contractor approved by Urban Farms, Inc. Any top soil stored on this lot is the property of the Seller and must not be moved."
Pursuant to the the terms of the contract, title was closed on September 30, 1961 and a deed containing all of the printed terms in the contract, except the additional typewritten *180 clause set forth above, was executed and delivered to defendants. Both the contract and the deed contained a schedule designated as "Schedule A," which included, among other covenants, conditions and restrictions, the following:
"No dwelling or other structure, nor any exterior alterations or improvements thereof shall be built, constructed, maintained, used or occupied unless and until the plans and specifications thereof, together with a plot plan showing the proposed location thereof, (and a grading plan of said plot if requested) shall have been approved by written endorsement of the grantor herein, its successors or assigns, upon said plans prior to the commencement of the construction thereof."
The evidence submitted at trial indicates that in June 1963 defendants decided to build a dwelling on the premises in question. After numerous conferences under the supervision of Carmine A. Latrecchia, president of a construction firm of the same name, plans and specifications for a two-story home were prepared by Rudolph G. Bolling, an architect, at Latrecchia's request. Latrecchia acted as agent for defendants. Bolling received $300 from Latrecchia. This rather conservative charge was fixed by arrangement with plaintiff. Defendants ultimately paid Latrecchia $370 for this service.
These plans and specifications were submitted to plaintiff and were returned to Latrecchia containing its written endorsement as follows:
 "APPROVED FOR URBAN FARMS, INC.
 JOB NO. 1-145
 BLOCK NO. 1110-A LOT NO. 14
 BY M.G.B. DATE 12-10-63"
The original plans and plot plans were then submitted to the Franklin Lakes building inspector, and after inspection and review an official building permit was duly issued to defendants on January 6, 1964. However, on December 23, 1963, plaintiff's approval of the plans and specifications was withdrawn by the following notation thereon:
 "NOT APPROVED
 APPROVAL WITHDRAWN
*181
 DEC. 20, 1963  CONTRACT WITH LATRECCHIA
 CANCELLED BY OWNER IN DEFAULT WITH
 OTHER AGREEMENTS TO BUILDER AND
 URBAN FARMS, INC. / / M G B 12/23/63"
Evidence submitted at trial indicates that the sole reason for the withdrawal of approval of the plans and specifications was defendants' failure to employ a contractor approved by plaintiff.
Defendants originally chose Latrecchia, Inc. as their "approved" builder, and it was this firm which submitted the plans and specifications to plaintiff. Upon the return of the approved plans, plaintiff requested an estimate from Latrecchia as to the cost of constructing the proposed home. The written estimate of $54,730 which defendants received included a 6% sales commission to be paid to plaintiff. This is the root of the problem presently before the court.
Defendants refused to pay $54,730 to Latrecchia if 6% ($3,283.80) of this amount would be paid over to plaintiff as a "sales commission." Since these were the only terms under which Latrecchia would agree to perform the work, a stalemate developed. Defendants then engaged Jurgensen Builders, Inc. (whose principals are related to defendant Mrs. Seel) to construct their home according to the plans and specifications previously submitted to plaintiff.
It appears that the president of plaintiff corporation orally informed defendants in January 1964 that an investigation of Jurgensen indicated that the firm was properly qualified and that it could become an approved builder if it (Jurgensen) first purchased a vacant lot from plaintiff, which is a prerequisite to approval. Jurgensen refused to accede to this request, but nevertheless began construction by clearing the land to start excavation.
This led to the institution of the instant proceeding and the granting of ex parte restraints on January 20, 1964, enjoining defendants from "digging and clearing premises * * * erecting any building, residence or other improvement * * *" on the property in question. By subsequent order of this *182 court, these restraints have been continued pending the final determination of this action.
As previously indicated, plaintiff contends that defendants have failed to comply with two separate restrictive covenants. The court will first consider the validity of the covenant contained in the contract that "any residence erected * * * will be built by a contractor approved by Urban Farms, Inc.," which covenant was not included in the deed executed by the parties. The governing rule of law as to whether such a covenant merges in the deed was set forth by Justice Haneman in Caparrelli v. Rolling Greens, Inc., 39 N.J. 585 (1963):
"It is generally recognized that the acceptance of a deed for lands is to be deemed prima facie full execution of an executory contract to convey, unless the contract contains a covenant collateral to the deed. Dieckman v. Walser, 114 N.J. Eq. 382, 385-386 (E. & A. 1933) [and citing other authority]. This rule of merger satisfies and extinguishes all previous covenants which relate to or are connected with the title, possession, quantity or emblements of the land. Contemporaneously, those covenants in the antecedent contract which are not intended by the parties to be incorporated in the deed, or which are not necessarily satisfied by the execution and delivery of the deed, are collateral agreements and are preserved from merger. Dieckman v. Walser, supra; Deerhurst Estates v. Meadow Homes, Inc., 64 N.J. Super. 134 (App. Div. 1960). The test herein is whether the alleged collateral agreement is connected with the title, possession, quantity, or emblements of the land which is the subject of the contract." (at p. 590)
The aforesaid provision requiring approval by plaintiff of any contractor selected to erect a residence has no relationship to "the title, possession, quantity or emblements of the land." It therefore survives the delivery of the deed as a collateral undertaking.
However, the mere survival of the covenant after the execution of the deed does not mean that it is binding on defendants. As our Supreme Court stated in Weinstein v. Swartz, 3 N.J. 80 (1949):
"A restrictive covenant is a contract. Rankin v. Brown, 142 N.J. Eq. 180 (Ch. 1948). Any neighborhood scheme that flows from the *183 terms thereof must to be effective and enforceable apply to all lots of a like character brought within the scheme. The consideration to each lot owner for the imposition of the restriction is that the same restrictions are placed upon the lots of others similarly located. Its universal character therefore is dependent upon reciprocal or mutual burdens and benefits shared by each lot owner brought within the orbit of the common neighborhood plan. Klein v. Sisters of Charity of Saint Elizabeth, 101 N.J. Eq. 761, 766 (E. & A. 1927); Scull v. Eilenberg, 94 N.J. Eq. 759 (E. & A. 1923)." (at p. 86)
See also Olson v. Jantausch, 44 N.J. Super. 380, 386 (App. Div. 1957), and Auerbacher v. Smith, 22 N.J. Super. 568, 573 (App. Div. 1952), certification denied 11 N.J. 498 (1953).
Plaintiff urges that its requirement of approving any contractor selected to build on Urban Farms is intended to benefit all the property in the development. According to plaintiff, this requirement assures that the residences will be of sufficient quality and the builder of adequate solvency. It is argued that the purchase of a lot from plaintiff by a builder (entitling him to approval) conclusively establishes his interest in this entire undertaking. The court cannot agree that such a purpose is served by the requirement. The type and quality of home which a resident plans to construct is more than adequately controlled by plaintiff's requirement that plans and specifications be submitted for approval. The solvency of contractors selected by the residents of the community appears to concern plaintiff only to the extent of whether the proposed builder can afford to pay a 6% commission to plaintiff. The 6% fee pays for plaintiff's overhead, consisting of salesmen and staff who will assist clients as much as possible. There is no indication that the payment of such a commission to plaintiff enhances the over-all community or any particular property thereon. I have therefore concluded that the restriction in the deed comprises neither a legal restriction nor an equitable servitude upon the estate.
"This is so because whatever the effect of the burden of the covenant, its benefit is clearly personal to the grantor, securing to him a mere commercial advantage in the operation of his business and not *184 enhancing or otherwise affecting the use or value of any retained lands." Caullett v. Stanley Stilwell & Sons, Inc., 67 N.J. Super. 111, 117 (App. Div. 1961).
Judge Freund indicated by way of dictum in Caullett that:
"Where the benefit is purely personal to the grantor, and has not been directed towards the improvement of neighboring properties, it cannot pass as an incident to any of his retained land and therefore is not considered to burden the conveyed premises but only, at best, to obligate the grantee personally. See 2 Tiffany, Real Property, § 399, pp. 1441-42 (1920)." (at p. 119)
The court has found no authority in this State for binding even the immediate grantee when the benefit of a restrictive covenant is purely personal to the grantor. As was stated in Houston Petroleum Co. v. Automotive Products Credit Ass'n, 9 N.J. 122 (1952):
"It is settled that a restrictive covenant is a contract dependent upon reciprocal or mutual burdens and benefits shared by each lot owner brought within the scheme thereof." (at p. 131)
Upon this reasoning, and that of Weinstein v. Swartz, supra, it appears that the restriction requiring plaintiff's approval of any builder selected by defendants is unenforceable because of the absence of the requisite consideration, i.e., reciprocal or mutual burdens and benefits. This court, as a court of equity, is particularly reluctant to enforce such a covenant. The restriction serves no purpose other than indirectly to secure for plaintiff a few thousand extra dollars from each purchaser of a lot at Urban Farms. Such a technique cannot be looked upon with favor and this court will not effectuate it. Defendants may thus select any contractor they desire to build their home.
The covenant requiring plans and specifications as well as a plot plan to be approved by plaintiff was incorporated in both the contract and the deed. It poses additional questions. The first, obviously, pertains to its enforceability. As already indicated, this requirement, by itself, adequately insures the *185 maintenance of the "ideal" community which plaintiff allegedly seeks to provide for its residents. This covenant, unlike the requirement set forth only in the contract, is not a device designed solely to benefit plaintiff corporation. Through the shared burden of having to submit their building plans to plaintiff for approval, all the residents of Urban Farms benefit in knowing that no eyesore or inferior structure will be permitted in their midst. This restrictive covenant is thus valid and binding on defendants. Houston Petroleum Co. v. Automotive Products Credit Ass'n, and Weinstein v. Swartz, supra.
Although only an application for an interlocutory injunction, the recent decision in Packanack Lake, etc. v. Alexander D. Doig Dev. Co., 72 N.J. Super. 360 (Ch. Div. 1962), offers further support for this court's conclusion that the covenant incorporated in the deed is enforceable. One of the restrictions considered by the court in Packanack Lake, almost identical to the covenant in the case sub judice, stated:
"g. Plan of dwelling and lot plan showing proposed location shall be submitted to the membership committee of Packanack Lake Country Club and Community Association and its approval secured before work is begun."
Such a covenant, the court held:
"* * * was for benefit of grantor's remaining lands and was to run with land and was to be binding on heirs and assigns of grantee * * * became `appurtenant' to and ran with title of grantor's remaining lands and subjected premises conveyed to equitable servitude, and grantee of remaining lands was entitled to benefit of covenant and could enforce such equitable servitude."
For the reasons stated above and those set forth by Judge Collester in Packanack Lake, supra, and in Coudert v. Sayre, 46 N.J. Eq. 386, 395 (Ch. 1890), upon which he relied, I find that the requirement that defendants submit plans and specifications to plaintiff is binding and enforceable. Defendants urge, however, that they have complied with this requirement, and I agree. The facts presented to the court *186 clearly disclose that plans and specifications were submitted by defendants' agent (Latrecchia) to plaintiff and were returned with an endorsement indicating that they had been approved.
This approval met the requirement of the covenant. Any purported withdrawal of the "approval" was ineffectual. Defendants have thus complied with the terms of the covenant contained in the deed and may proceed to build in accordance with the plans and specifications submitted to and approved by plaintiff.
Submit judgment in accordance with the terms of this opinion, or proceed under R.R. 4:55-1. No costs.