No. 21352.

CITY OF WESTMINSTER, A MUNICIPAL CORPORATION *v.* SKY-
LINE VISTA DEVELOPMENT COMPANY, A COLORADO
CORPORATION.

(431 P.2d 26)

Decided August 28, 1967.     Rehearing denied September 18, 1967.

DONALD D. CAWELTI, LEE, BRYANS, KELLY & STANS-
FIELD, for plaintiff in error.

WILLIAM O. PERRY, JOHN T. MALEY, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

WE will refer to plaintiff in error as Westminster and to defendant in error as Skyline.

The undisputed factual background for an understanding of the question involved in this writ of error is as follows: Joe and Rose LaConte were owners of a quarter section of land in an unincorporated portion of Adams County near the city of Westminster. There was situated thereon a water well, pump, reservoir and appurtenant equipment. On October 1, 1954 the LaContes conveyed the well site and equipment to three individuals (predecessors in title to Skyline). The deed from the La-Contes contained the express reservations to themselves and their assigns of "full and perpetual right to receive water * * * from the said well and from the well pumps, tanks, reservoirs, water mains and pipelines used with or connected to the said well, * * * water rates and tap charges not more than the lowest charges which shall be established for other users of such water in any subdivision platted or to be platted in the said S-½ SE-¼ of Section 32, provided, however, that the water rates to be charged the grantors shall in no event exceed those now in force in the town or City of Westminster, Colorado, and the tap charge shall in no event exceed $150.00 per tap, * * *." The balance of the reservation is not pertinent to the dispute herein.

The deed was recorded on October 2, 1954. The three grantees in the above deed conveyed the property to Skyline. On June 28, 1956 Skyline entered into an annexation agreement (hereinafter called the agreement) with Westminster which was five pages in length and

contained 20 paragraphs covering a number of matters involved in the annexation, such as water mains that would be required to serve the area, payment of the costs thereof, timing of installation, reimbursement for water main costs, conveyance of a school site, zoning of the annexed area, and provisions for street improvements.

Paragraph 12 was a covenant by Westminster to purchase the well site, water well and equipment located and situated upon land specifically described and a covenant by Skyline upon performance of certain conditions prerequisite, as provided in the agreement, to execute and deliver good and sufficient warranty deed to Westminster, conveying the described land including the well site, well, reservoir and equipment.

Paragraph 18, pertinent to the dispute herein, reads:

"The Company has on the 1st day of October, 1954, executed an Agreement wherein the Company agrees to furnish water taps to Joe LaConte and Rose LaConte, their heirs or assigns, for the sum of $150.00, and the Company further agrees to pay any difference between the said sum of $150.00 and the then current City of Westminister water tap charge assessed to Joe LaConte and Rose LaConte, their heirs or assigns, should Joe LaConte and Rose LaConte, their heirs and assigns, apply for water tap or taps."

Skyline by warranty deed on the same date as the agreement conveyed the property, including the well site, etc., as noted above in the agreement, "subject to protective covenants, reservations, restrictions which now appear of record." Subsequently the LaContes were charged more than $150 per water tap, and they commenced suit against Westminster to recover the amount of the overcharge. Westminster as third party plaintiff filed a claim against Skyline as third party defendant, attaching the agreement as an exhibit and alleging that by virtue of the provisions of paragraph 18 thereof Skyline was obligated to pay to Westminster the differ-

ence between $150 agreed minimum water tap fee and the current rate being charged by Westminster.

Upon trial to the court judgment was entered in favor of the LaContes and against Westminster for the sum of $1281.80, representing the admitted excess over the $150 per tap rate provided in the reservation. The court, however, refused to grant Westminster as third party plaintiff relief sought against Skyline for the payment of the difference. Westminster by this writ of error does not seek to relieve itself from the judgment obtained against it by the LaContes. It challenges the correctness of the court ruling refusing to require Skyline to reimburse Westminster for the amount.

The sole question before this court is whether the court erred in refusing to enforce the executory provision of the agreement as contained in paragraph No. 18, recited in full above.

It is the contention of Westminster that the agreement was plain and unambiguous, self-explanatory, and continued in full force and effect. Skyline successfully persuaded the trial court to rule in its favor on the theory, which it advances here, that the agreement merged with the deed and that when Skyline failed to incorporate in the deed the provisions of paragraph 18, the deed became the final contract of the parties, and supersedes and nullifies the preliminary executory agreement as evidenced in paragraph 18. Put in another way, Skyline contends that the reservations of record in favor of the LaContes are recognized in the deed and bind the grantee Westminster, but that there is no other reservation binding the grantor Skyline in said deed; that the conveyance is the final executed contract of the parties and that the contemporaneous agreement merged therein.

■ We recognize the rule in this state that prior agreements are merged in the final and formal contracts executed by the parties. *Wilson v. Barney*, 90 Colo. 461,

9 P.2d 1058; *Thomas v. Dunnean*, 75 Colo. 216, 225 P. 253; *Enos v. Anderson*, 40 Colo. 395, 93 P. 475.

However, there is a well recognized modification of this rule which this court announced in *Glisan v. Smolenske*, 153 Colo. 274, 387 P.2d 260, wherein the court said:

"If the terms of a sale and purchase agreement are fulfilled by the delivery of the deed, there is a merger; but if the delivery of the deed is only one of a number of things to be performed under the terms of the contract, the delivery of the deed constitutes part performance, and the other matters to be performed remain obligatory. *Weck v. A.M. Sunrise Construction Co., supra; Chicago Title & Trust Co. v. Wabash-Randolph Corp.*, 384 Ill. 78, 51 N.E.2d 132; *Christiansen v. Intermountain Ass'n*, 46 Ida. 394, 267 Pac. 1074; *Allen v. Currier Lumber Co.*, 337 Mich. 696, 61 N.W.(2d) 138; *Van Hee v. Rickman*, 109 Ore. 357, 220 Pac. 143."

The rule in the *Glisan* case, *supra*, is applicable to the question in this writ of error. Westminster and Skyline executed the annexation agreement and the deed on the same day, giving rise to the inference that they are contemporaneous instruments and are to be construed together. In the agreement were other executory provisions other than the matter of the payment of the difference between $150 and the charge to La-Conte which Westminster collected for water taps. These executory provisions did not merge by the execution of the deed and remain in full force and effect. Some of the provisions were: (a) Skyline obligated itself for a period of five years from the date of the agreement to pay from one fourth to one half of the costs of installation and construction of certain connecting water mains, contingent upon execution of similar agreement with a third party; (b) Skyline agreed to install two other water mains; (c) Skyline agreed to transfer all right, title and interest to all water mains to the city; (d) Westminster agreed to zone the annexed area as in-

dicated on a plat attached to the agreement; (e) Skyline agreed to sign a street improvement agreement. A reading of the whole agreement indicates that the parties intended it to govern their actions subsequent to delivery of the deed. The execution of the deed was also only one of the convenants to be performed in the agreement. A test as to whether there is a merger was succinctly set forth in *Urban Farms, Inc. v. Seel,* 87 N.J. Super. 177, 208 A.2d 434, at 437:

"It is generally recognized that the acceptance of a deed for lands is to be deemed *prima facie* full execution of an executory contract to convey, unless the contract contains a covenant collateral to the deed. Dieckman v. Walser, 114 N.J.Eq. 382, 385-386, 168 A. 582 (E. & A. 1933) [and citing other authority]. This rule of merger satisfies and extinguishes all previous covenants which relate to or are connected with the title, possession, quantity or emblements of the land. Contemporaneously, those covenants in the antecedent contract which are not intended by the parties to be incorporated in the deed, or which are not necessarily satisfied by the execution and delivery of the deed, are collateral agreements and are preserved from merger. Dieckman v. Walser, supra; Deerhurst Estates v. Meadow Homes, Inc., 64 N.J. Super. 134, 165 A.2d 543 (App. Div. 1960). The test herein is whether the alleged collateral agreement is connected with the title, possession, quantity or emblements of the land which is the subject of the contract."

The executory provisions in the agreement had no relationship with the "title, possession, quantity or emblements of the land." Therefore, the executory provision which is the subject matter of this writ of error, as well as the others not litigated, survive the delivery of the deed as a collateral undertaking.

The judgment of the trial court is reversed with directions to enter judgment in favor of the third party plaintiff Westminster, and against the third party defendant, Skyline, in an amount commensurate with

moneys paid by Westminster to the LaContes, together with statutory interest from the date Westminster satisfied its judgment against the LaContes.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE McWILLIAMS and MR. JUSTICE HODGES concur.