**Sidney B. BROOKS and Carol E. Brooks, Plaintiffs-Appellees,**

v.

**Kent W. HODGES and Barbara Hodges, Defendants-Appellants.**

No. 78–390.

Colorado Court of Appeals, Div. III.

Sept. 6, 1979.

Rehearing Denied Oct. 4, 1979.

Certiorari Denied Feb. 11, 1980.

Sidney B. Brooks, Denver, for plaintiffs-appellees.

Gerald A. Kay, Denver, for defendants-appellants.

RULAND, Judge.

Kent W. and Barbara Hodges (sellers) appeal from an adverse judgment finding

them liable for damages resulting from a breach of express warranty made in connection with the sale of a used home to Sidney B. and Carol E. Brooks (buyers). We affirm.

The record reflects that in March of 1977 the sellers listed their home for sale through a real estate broker. On approximately April 9 or 10, the buyers examined the home with their broker and submitted an offer to purchase it. This offer contained a provision conditioning final acceptance on a satisfactory engineering report of the premises. A counter proposal, incorporating the inspection provision, was made by the sellers, and accepted by the buyers on April 14, 1977.

On April 19, 1977, in accordance with the contract, the buyers, their brokers, and their engineer, all inspected the home. The buyers later received a written report from their engineer which included a general description of the condition of the home including the floors and floor coverings. The buyers found the report satisfactory, and a closing date was set for June 14, 1977.

On June 10, one of the buyers was again allowed access to the home to take certain measurements, and was left alone with unrestricted access for a period of twenty minutes. At no time during any of these visits to the home did any of the parties notice anything unusual about the condition of the home.

On June 14, 1977, after closing and the delivery of the deed, the buyers went to the residence and immediately noticed a strong odor emanating from the premises. In an attempt to remove the odor, the buyers contracted to have the carpeting steam cleaned, but the odor only became stronger after a hot water treatment was applied. A subsequent examination of the rugs in the house revealed numerous urine stains throughout the wall-to-wall carpeting.

Following a trial to the court, it concluded that an express warranty of fitness arose from a provision of the contract which read:

"Price to include any of the following items currently on the premises . . . wall to wall carpeting . . . draper-ies . . . *in their present condition . . . .*" (emphasis added).

The deed transferring title contained no reference to this contract provision.

The court found that this express warranty was breached by a change of conditions between the date of signing the contract and the date of closing which rendered the residence uninhabitable.

■ The sellers first contend that the trial court's finding as to the "change in condition" was against the manifest weight of the evidence. They rely upon evidence to the effect that such a large amount of urine and animal waste could not have accumulated in the two-month period between April and June. They assert that the cleaning process used by the buyers caused the odors, and that because the defective condition must have existed prior to the time the contract was signed, the doctrine of *caveat emptor* should apply. They also argue that no liability can exist when the defect was unknown to both sellers and buyers. We find no merit in these contentions.

The buyers testified that, upon arriving at the home after closing, they were immediately aware of a strong and pervasive odor in the house. This condition was confirmed by a member of the rug cleaning crew. He testified that upon entering the premises, he detected an animal odor and observed hardened animal waste in the house. This occurred before any attempt was made to sanitize the carpet with the application of a hot water cleaning treatment. Thus, there existed sufficient evidence from which the trial court could find that the condition of the premises breached the express warranty, and we are bound by this determination even though we might have reached a different conclusion based upon the evidence presented. *Whatley v. Wood,* 157 Colo. 552, 404 P.2d 537 (1965).

■ Also, where, as here, the sellers make an express warranty, the fact that the sellers had no knowledge of the defect is not a defense in an action for breach of that warranty. *Kensair Corp. v. Peltier,* 28 Colo.App. 290, 472 P.2d 700 (1970).

The sellers' next contention is that the terms of the express warranty of fitness were merged into the deed at closing and that it had no legal effect thereafter. We disagree.

In *Westminster v. Skyline Vista Development Co.*, 163 Colo. 394, 431 P.2d 26 (1967), our Supreme Court approved an exception to the merger doctrine which applies where delivery of the deed constitutes only part performance of a sales contract. As noted in *Westminster*, absent express language to the contrary, delivery of a deed extinguishes only covenants pertaining to "title, possession, quantity or emblements of the land." Express warranties as to the "quality" [fitness] of the improvements are not included within the general warranties of the deed and therefore merger does not occur. *Rouse v. Brooks*, 66 Ill.App.3d 107, 383 N.E.2d 666 (1978).

Judgment affirmed.

SMITH and BERMAN, JJ., concur.