**TERRYDALE LIQUIDATING TRUST, Plaintiff,**

v.

**Herbert BARNESS, et al., Defendants.**

**SAN FRANCISCO REAL ESTATE IN-VESTORS, INC., Counterclaimant and Third-Party Plaintiff,**

v.

**TERRYDALE LIQUIDATING TRUST, et al., Counterdefendants and Third Party Defendants.**

No. 82 CIV 7920 (LBS).

United States District Court,
S.D. New York.

Oct. 24, 1986.

Leventritt, Lewittes & Bender, Garden City, N.Y., for plaintiff; Sidney Bender, Aaron Lewittes, Janine L. Bender, of counsel.

Skadden, Arps, Slate, Meagher & Flom, New York City, for defendants; Barry H. Garfinkel, Douglas M. Kraus, Erskine D. Henderson, Mitchell C. Sockett, of counsel.

SAND, District Judge.

Defendants, San Francisco Real Estate Investors, Inc. and its directors (collectively "SFREI"), have moved, pursuant to certain contractual provisions, for an award of attorneys' fees incurred in the successful defense of a lawsuit between SFREI and plaintiff Terrydale Liquidating Trust (hereinafter "TLT"), a successor-in-interest to Terrydale Realty Trust ("TRT"). The events giving rise to the instant motion have been explained in detail in prior opinions in this complex litigation. *See Terrydale Liquidating Trust v. Barness, et al.,* 642 F.Supp. 917 (S.D.N.Y.1986); *see also Terrydale Liquidating Trust v. Barness, et al.,* 611 F.Supp. 1006 (S.D.N.Y.1984); *Terrydale Liquidating Trust v. Gramlich,* 549 F.Supp. 529 (S.D.N.Y.1982); *Bolton v. Gramlich,* 540 F.Supp. 822 (S.D.N.Y.1982). Although familiarity with these prior opinions is assumed, we present a brief review of certain critical background facts in order to frame the context in which we must decide SFREI's motion for an award of attorneys' fees.

## BACKGROUND

This motion grows out of a struggle for control of TRT. On January 9, 1981, BCG Associates (hereinafter "BCG"), an entity controlled by the individuals who now control TLT, commenced an unsolicited tender offer for a portion of TRT's outstanding shares. In the wake of the unsolicited offer, TRT sold to SFREI, in February of 1981, approximately 80% in value of TRT's assets, specifically, four office buildings located in Denver, Colorado. In addition, the TRT trustees (now ex-trustees) adopted and disclosed a plan to liquidate TRT and to distribute the proceeds of the SFREI sale, along with the remaining trust assets, to the TRT shareholders. Liquidating dividends were declared and the value of TRT stock declined. By January of 1982, the BCG group had obtained a majority interest in TRT. Subsequently, on January 28, 1982, the TRT shareholders approved the creation of TLT and elected as TLT trustees a slate of nominees controlled by the BCG group. TLT, newly controlled by what is in essence a defeated tender offeror, then became a named plaintiff in a suit (i) against the former TRT trustees, charging that they sold the TRT assets at distress prices to defeat the tender offer, and (ii) against SFREI, alleging that SFREI aided and abetted the sale and in any event had sufficient notice of the trustees' alleged breach to warrant the equitable claim of restitution.

By Opinion dated November 19, 1984, 611 F.Supp. 1006, this Court, *inter alia,* granted in part SFREI's motion for summary judgment and dismissed plaintiff's claim that SFREI aided and abetted the TRT trustees' alleged breach of fiduciary duty. Concluding, however, that material questions of fact existed as to whether the TRT trustees had breached their fiduciary obligations and whether SFREI had sufficient notice thereof which would warrant imposition of liability as a constructive trustee, this Court denied SFREI's motion for summary judgment on the restitution claim. *See* 611 F.Supp. at 1033.

A trial ensued and by Opinion dated August 26, 1986, this Court dismissed TLT's complaint. Specifically, the Court found that by voting for the transaction with SFREI and the liquidation plan, the TRT trustees breached neither TRT's Declaration of Trust nor the fiduciary duty they owed to TRT's shareholders. In addition, we found that there was no basis upon which to conclude that SFREI should have known that a breach occurred and thus held to be constructive trustees of the subject properties. *See* Opinion, 82 CIV 7290 at p. 28, August 26, 1986. Accordingly, TLT's equitable claim for restitution was dismissed.

### Successor Liability

SFREI's present motion for an award of attorneys' fees is based on Paragraph 15 of each of the purchase and sale agreements which were executed in February of 1981 by SFREI and TRT in connection with the sale of the Denver properties. Paragraph 15 states:

"ATTORNEYS' FEES. Each party shall pay its own attorneys' fees. If, however, any dispute between the parties hereto should result in litigation, the prevailing party shall be reimbursed for all reasonable costs, including, but not limited to, reasonable attorneys' fees."

SFREI argues that TLT is the successor-in-interest to the obligations and liabilities of TRT and as such is bound by the contractual obligations contained in Paragraph 15. In light of the fact that SFREI was the "prevailing party" in the underlying lawsuit, it seeks to recover from TLT the reasonable attorneys' fees SFREI incurred in conducting its defense.

TLT urges denial of SFREI's motion for attorneys' fees on a number of grounds. First, TLT argues that TLT is not the party that executed the purchase and sale agreements and, accordingly, is not bound to honor TRT's obligations thereunder. In this connection, TLT emphasizes that the purchase and sale agreements do not explicitly bind TRT's successors and assigns.

We reject the contention that TLT is not a successor party obligated by the terms of the purchase and sale agreements between TRT and SFREI. The nature of the relationship between TRT and TLT and the history of this litigation belie TLT's contention that it is not a successor to TRT's rights and obligations.

On February 5, 1982, the trustees of TRT and the recently elected trustees of TLT executed a Termination and Liquidating Trust Agreement (hereinafter "Termination Agreement") which, *inter alia,* dissolved TRT and created TLT. Pursuant to the Termination Agreement, all of the "assets, properties, claims and rights" of TRT were transferred and assigned to TLT "subject to all liabilities and obligations of [TRT]." *See* Termination Agreement at p. 3. TLT's broad assumption of liability was accompanied by correspondingly broad language empowering the TLT trustees to use the trust assets to satisfy TRT's obligations. The Agreement directed that the trust estate "be held and disposed of ... for the uses and purposes" as set forth therein. *Id.* The TLT trustees, as trustees in dissolution, were given the authority to "pay any and all expenses, costs, fees ... or other charges which are obligations or liabilities of [TRT] or [TLT] (including, but not limited to, all expenses, costs, fees or other charges appropriately arising from any valid indemnification agreement or any proper resolution of the [TRT] Board of Trustees providing for indemnification of [TRT] trustees or third parties." *Id.* at p. 8.

The broad assumption of liability in the Termination Agreement, a document which was executed approximately a year after the execution of the purchase and sale agreements at issue in the present dispute, illuminates the intentions of TRT and TLT as TRT proceeded towards liquidation. TLT's express assumption negates the significance that TLT seeks to place on the absence of express language binding successors and assigns in the TRT–SFREI purchase and sale agreements. The plain language of the Termination Agreement suggests that TLT intended to take on all of TRT's obligations.[1]

TLT's course of conduct in the litigation that underlies the instant motion confirms that TLT, as a successor-in-interest to TRT, is a successor party to the purchase and sale agreements. As we indicated above, the BCG group's attempted takeover of TRT was initially thwarted by the sale of the Colorado properties to SFREI. In the ensuing litigation, when the defeated offerors filed suit against SFREI, they named TRT itself as a nominal defendant aligned alongside SFREI. However, following the sale of the Colorado properties to SFREI, the BCG group succeeded in gaining control of TRT, which was then liquidated. At some point, therefore, the litigation became a dispute between TRT's successor and SFREI, rather than a suit between individual shareholders of TRT and SFREI. Indeed, after the original plaintiffs gained control, they added TLT as a plaintiff in the action, suing SFREI in TLT's capacity as a successor to TRT. The litigation then proceeded pursuant to that alignment. As TLT itself has previously asserted in this litigation, TLT is:

"the successor and assign of Terrydale Realty Trust as to all claims including the claims presented in the aforesaid action in its behalf derivatively. With respect to said claims, Terrydale Liquidat-

1. The Termination Agreement is, by its explicit provisions, governed by New York law. Under New York law, it is recognized in a roughly analogous situation involving the purchase and sale of corporate assets that a transferee's express assumption of a transferor's liability will obligate a transferee to third parties. *Ladjevardian v. Laidlaw-Coggeshall, Inc.,* 431 F.Supp. 834 (S.D.N.Y.1977). Similarly, where a corporation assigns or transfers assets for the purpose of escaping a liability, the transferee will nevertheless be bound to discharge the liability. *See Schumacher v. Richards Shear Co., Inc.,* 59 N.Y.2d 239, 451 N.E.2d 195, 464 N.Y.S.2d 437, 440 (1983). This is so despite the absence of language binding successors and assigns in the agreement with the third party that creates the liability. Just as a corporate transferee who expressly assumes a transferor's liabilities is obligated to satisfy those liabilities, so TLT is under a contractual duty to discharge TRT's obligations.

ing Trust as successor to Terrydale Realty Trust, changed status to plaintiff and Terrydale Realty Trust was dropped as nominal defendant."

*See* Second Amended Complaint at ¶ 16(c). Having stepped into TRT's shoes, TLT itself was able to sue SFREI for restitution in connection with the purchase and sale agreements executed by SFREI and TLT's predecessor, TRT.

■ In light of the foregoing considerations, we find that TLT is a successor party bound to honor TRT's obligations under the purchase and sale agreements. In addition, for the reasons detailed below, we hold that the obligations TLT assumed as TRT's successor include TRT's obligation to pay SFREI's "reasonable attorneys' fees" as the "prevailing party" in the litigation between SFREI and TLT.

TLT argues that even if this Court finds that TLT assumed TRT's obligations under the purchase and sale agreements, "there was nothing for TLT to assume or become obligated upon" at the time the Termination Agreement was executed. *See* Affidavit of S. Bender at p. 2. We disagree.

Under the purchase and sale agreements, TRT and SFREI each agreed to assume, prospectively, an obligation to pay the prevailing party's attorneys' fees "if ... any dispute between the parties hereto should result in litigation." That this obligation was inchoate or contingent at the time TLT assumed "all liabilities and obligations of [TRT]" does not serve to take the obligation out of the broad class of obligations TLT expressly assumed. *See Philadelphia Electric Co. v. Hercules, Inc.,* 762 F.2d 303, 309–10 (3d Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985). We do not at this point fix the precise moment when TRT's inchoate obligation to SFREI under the purchase and sale agreements matured. We note only that at some point the underlying litigation was transformed from an action by the BCG group against both SFREI and TRT into a dispute between TRT's successor, TLT, aligned on one side, and SFREI, aligned on the other. At the point of trans-

formation, the litigation became a dispute within the purview of Paragraph 15 of the purchase and sale agreements.

*Merger*

TLT advances the argument that it is improper for SFREI to base its motion for attorneys' fees on Paragraph 15 of the purchase and sale agreements because those agreements merged into the conveyancing instruments pursuant to which the Colorado properties were transferred to SFREI. To buttress this contention, TLT emphasizes that the conveyancing instruments themselves contain specific indemnity language, including an indemnity concerning attorneys' fees.

Colorado law, which governs the interpretation of the purchase and sale agreements, recognizes the rule that prior agreements are merged in the final and formal agreements executed by the parties. *Wilson v. Barney,* 90 Colo. 461, 9 P.2d 1058 (1932). However, Colorado also recognizes a widely accepted and major modification of this rule which holds that "those covenants in the antecedent contract which are not intended by the parties to be incorporated in the deed, or which are not necessarily satisfied by the execution and delivery of the deed, are collateral agreements and are preserved from merger." *City of Westminster v. Skyline Vista Development Co.,* 163 Colo. 394, 431 P.2d 26, 29 (1967) (quoting from *Urban Farms, Inc. v. Seel,* 87 N.J.Super. 177, 208 A.2d 434, 437 (1965)). It is clear under Colorado law that there is no merger where the contractual agreements sought to be enforced do not relate to the "title, provision, quality, or emblements of the land which is the subject of the contract." *Id.; see also Brooks v. Hodges,* 43 Colo.App. 205, 606 P.2d 77, 79 (1979).

In *Skyline,* one of the principal Colorado merger cases, the Colorado Supreme Court reversed a trial court ruling that certain executory provisions in an annexation agreement merged into the deed. The reviewing court explained that it was significant that the annexation agreement and

the deed at issue in the case were executed on the same day. The fact that the agreements were executed on the same day gave "rise to the inference that they were contemporaneous instruments to be construed together." *Skyline*, 431 P.2d at 29. In addition, the court held that because the specific covenants in question concerned maximum water charges to be levied in the future, they were not necessarily satisfied by the delivery of the deed. *Id.*

■ This case falls squarely within *Skyline*. As in *Skyline*, the purchase and sale agreements and the conveyancing instruments are dated as of the same day, February 5, 1981. This factor suggests that a merger was not intended. Furthermore, the contractual covenant SFREI seeks to enforce does not relate to "title, possession, quantity or emblements" of land. *Id.* The attorneys' fees covenant is a collateral agreement that is "not necessarily satisfied by the execution and delivery of the deed." *Id.* As in *Skyline*, a reading of the entire purchase and sale agreements "indicates that the parties intended [the agreements] to govern their actions subsequent to delivery of the deed." *Id.*

The fact that the purchase and sale agreements contain other provisions which speak prospectively, aside from Paragraph 15, strengthens our conclusion that the parties did not intend a merger. For example, the Petroleum Club purchase and sale agreement obligates TRT "to fully satisfy and discharge as such obligations mature, any liability for leasing commissions due to any party arising from the leasing of any space in the Property prior to Closing which sums become due after Closing."

*See* Petroleum Club Purchase and Sale Agreement at ¶ 9(c). In addition, TRT agreed to "indemnify and hold [SFREI] harmless (including reasonable attorneys' fees) in the event of any claims relating to any and all such leasing provisions." *Id.* If we were to accept TLT's merger argument, it would be difficult not to conclude that these and other prospectively worded provisions are of no force and effect.[2] Under the circumstances, we cannot accept TLT's contention that there was a merger.

The presence of specific indemnities in three of the four conveyancing instruments does not compel a different outcome.[3] Such indemnities often appear in lease assignments. They are designed to protect TRT in specific situations in which SFREI's acts, as a grantee in possession of the subject land, cause TRT, the grantor, to incur liability. It would be strained to view the existence of these indemnities as a factor which overcomes the evidence that the parties did not intend the conveyancing instruments to nullify the collateral provisions in the concurrently executed purchase and sale agreements.[4]

*Non-joinder of TRT Trustees*

TLT urges the Court not to decide SFREI's motion because the former trustees of TRT are indispensable parties who have not been joined as parties to this litigation. According to TLT, in light of the fact that SFREI dismissed with prejudice its claims for attorneys' fees against the former trustees, "SFREI cannot now in this litigation assert a claim for attorneys' fees against the former Trustees of TRT." *See* Plaintiff's Memorandum of Law at 7.

2. *See,* for example, Paragraphs 4.3 and 21 of each of the purchase and sale agreements.

3. We note that the Special Warranty Deed pertaining to the Century Plaza property does not contain the indemnity provision that appears in the Assignment of Ground Lease executed in connection with the transfer of the Lincoln Tower property, the Petroleum Club property, and the Traveler's property.

4. Similarly, the "covenant and warranty" language in the conveyancing instruments does not, as TLT contends, demonstrate that a merg-

er was intended. *See* Affidavit of S. Bender at 4–5. The "covenant and warranty" is expressly designed to supersede and replace only other "covenants and warranties of title." Likewise, the fact that TRT's assignment to SFREI of the $3 million wraparound junior mortgage loan contains the phrase "without recourse" does not indicate that a merger was intended. Rather, the phrase "without recourse" appears to mean that SFREI could not look to TRT's trust estate for collection of payments due from the mortgagor, Lincoln Tower Building Co.

As additional support for its joinder argument, TLT alleges that if SFREI were to recover attorneys' fees from the former TRT trustees, TLT would have "a complete defense on any claim against TLT by the former trustees...." *Id.* at 8.

■ TLT's joinder argument fails to recognize that the present motion for attorneys' fees is not—and could not be—a claim against the former TRT trustees. SFREI's motion consists of a claim against the trust entity, TLT, not against the former TRT trustees. Indeed, under the purchase and sale agreements, SFREI could not recover attorneys' fees from the trustees as opposed to the trust. Each of the purchase and sale agreements contains an exculpation clause that expresses the intent of the parties, in executing the agreement, to impose obligations on the executing entities, not the individual trustees of those entities:

> "21. *Exculpation.* Seller and Buyer are both real estate investment trusts. The shareholders, trustees, officers, agents and employees of the trusts shall not be personally liable under any written instrument creating an obligation of the trust, and all persons shall look solely to the trust estate for payment of any claims thereunder or the performance thereof."

The "trust estate," not the individual trustees, is the designated fund for the satisfaction of any obligations contained in the purchase and sale agreements. Accordingly, the TRT trustees are insulated from liability to SFREI and, therefore, are not indispensable parties. In light of this holding, we need not now address the merit of plaintiff's contention that it has a complete defense to any claim for attorneys' fees by the former trustees against TLT.

### Waiver

■ Related to TLT's joinder argument is the contention that SFREI waived its claim for attorneys' fees by agreeing to pay the attorneys' fees of the former TRT trustees. Even if it were established that SFREI agreed to pay the attorneys' fees of the TRT trustees, we fail to see how that would operate as a waiver of SFREI's claim for the reasonable attorneys' fees it incurred in successfully defending itself against TLT's lawsuit. Therefore, we deny TLT's request for further discovery on this issue.

### Unclean Hands

■ Finally, we reject TLT's claim that SFREI is "guilty of unclean hands" because it concealed "true facts" when it moved early in this litigation to dismiss the complaint for lack of personal jurisdiction. *See* Plaintiff's Memorandum of Law at 12. This Court ultimately rejected SFREI's lack of personal jurisdiction defense. However, SFREI's assertion of this defense does not constitute "unclean hands" and thereby warrant denial of its motion for attorneys' fees.

### Conclusion

For the reasons detailed above, SFREI's motion for the reasonable attorneys' fees it incurred in successfully defending itself against the claims brought by TLT is granted. SFREI is to submit by November 10, 1986 its application for a specific fee award accompanied by appropriate affidavits and other documentation. TLT is to file its papers in response thereto by November 24, 1986, at which point the Court will take the matter under advisement.

Motion granted.

SO ORDERED.