James E. SKIDMORE,
Plaintiff–Appellant,

v.

FIRST BANK OF MINNEAPOLIS, Personal Representative of the Estate of Merrill J. Anderson; First Bank of Minneapolis, Personal Representative of the Estate of Donna D. Anderson; Wallace L. Hall a/k/a Wallace Hall; Gerald W. Feil and Sally S. Feil; George W. Callan and Mary Ann Callan; Communities Foundation of Texas; Hall Associates, Ltd.; La Plata Abstract Company, Trustee, a Colorado corporation; and the Public Trustee of the County of Archuleta, State of Colorado, and All Unknown Persons Who Claim any Interest in the Subject Matter of this Action, Defendants–Appellees.

No. 85CA1640.

Colorado Court of Appeals,
Div. III.

Nov. 3, 1988.

Rehearing Denied Dec. 8, 1988.

Certiorari Granted May 15, 1989.

Karsh & Fulton, P.C., Alan E. Karsh, Denver, for plaintiff-appellant.

Shand, McLachlan & Malick, P.C., Keith Newbold, Durango, for defendant-appellee First Bank of Minneapolis.

R. Martin Rhodes, II, Durango, for defendant-appellee Wallace L. Hall.

McDaniel and McDaniel, L.W. McDaniel, Durango, for defendants-appellees Feil, Callan, and La Plata Abstract Co.

STERNBERG, Judge.

The plaintiff, James E. Skidmore, appeals a ruling on his motion for partial summary judgment that his roadway easement was non-exclusive. He also appeals the judgment entered following trial to the court denying his claim for injunctive relief and awarding attorney fees to some of the defendants. We affirm in part, and reverse in part.

In 1973, Skidmore bought a large tract of mountain property in Archuleta County. No roadway existed to the tract. Only old homestead trails and pioneer type roadways allowed access. A dispute arose concerning access and resulted in the filing of an action in the United States District Court.

As a result of that action an agreement was reached under which the owners of adjoining lots promised to deliver to Skidmore a quitclaim deed granting a roadway easement across their property. That agreement provided that the easement would be "limited to the owners of the James E. Skidmore tract, their heirs, successors, assigns, invitees and permitees." The agreement also stated that "cost of construction and maintenance of the roadway easement shall be borne solely by James E. Skidmore." The quitclaim deed granting the roadway easement contained standard language, and was delivered to Skidmore, but neither of the quoted provisions of the agreement was contained therein.

In 1982, Skidmore discovered the roadway had been damaged as a result of construction activities on one of the lots burdened by the easement. He thereupon filed the instant action requesting the court to enjoin defendants, the persons with existing interests in the servient estates, from using the roadway. On the parties' cross-motions for summary judgment, the trial court ruled that the language of the written agreement was insufficient to establish an exclusive easement. The court also concluded that the written agreement merged with the quitclaim deed, thereby extinguishing the provision in the written agreement limiting use of the easement to Skidmore, his heirs, assigns, and invitees. The court therefore granted defendants' motion and dismissed Skidmore's claim for injunctive relief.

Skidmore then amended his complaint to include a claim for damages and a request that the court allocate the roadway maintenance costs among the parties. After a bench trial, the court found that any damage to the roadway had been adequately repaired. The court also concluded that the doctrine of merger did not extinguish the language in the written agreement designating Skidmore as solely responsible for maintaining the roadway. The court there-

fore entered judgment in favor of defendants and against Skidmore. This appeal followed.

## I.

Skidmore contends that the trial court erred in granting partial summary judgment in favor of defendants on the issue whether he was granted an exclusive easement. He argues that the language of the written agreement clearly established his right to exclude all others, including the owners of the servient estates, from using the roadway. Skidmore does not directly challenge the trial court's conclusion that the doctrine of merger negates the provision in the written agreement limiting use of the roadway to him. Rather, he argues that if the merger doctrine operated to extinguish any claim of exclusive use of the roadway, it also extinguishes the provision in the written agreement making plaintiff solely responsible for maintenance and repair of the roadway. While this argument has a look of logic, we disagree with it.

## A. THE QUITCLAIM DEED

■ An easement is an interest in property which confers upon its holder an enforceable right to use the property of another for specific purposes. *Wright v. Horse Creek Ranches,* 697 P.2d 384 (Colo. 1985). "An easement does not carry any title to the land over which it is exercised and the easement does not work a dispossession of the landowner.... The owner of the servient estate continues to enjoy all the rights and benefits of proprietorship consistent with the burden of the easement ... [and] it is also the rule that the grantor of an easement, and his assigns, have a right of user in common with the grantee." *Barnard v. Gaumer,* 146 Colo. 409, 361 P.2d 778 (1961). Only where the grant conveying the easement specifically characterizes it as "exclusive" does the grantor lose its rights to use the easement in common with the grantee. *Barnard v. Gaumer, supra; Bergen Ditch & Reservoir Co. v. Barnes,* 683 P.2d 365 (Colo.App. 1984).

As in *Barnard* and *Bergen Ditch,* the deed conveying the easement here did not contain words of exclusivity or sole use. The situation in this case is to be contrasted with that in *Alexander Dawson, Inc. v. Fling,* 155 Colo. 599, 396 P.2d 599, 396 P.2d 599 (1964), where the easement was characterized as being for "sole and exclusive use." Thus, looking only to the quitclaim deed, we conclude that the defendants retained the right to use the easement in common with Skidmore.

## B. MERGER—THE AGREEMENT LIMITING USE

■ The question then becomes whether the language in the agreement that preceded the delivery of the quitclaim deed changes this result. That agreement did contain language purporting to limit the right to use the easement to the grantee, Skidmore. However, even if we assume that the language in the agreement does limit the use of the easement to Skidmore, and excludes the rights of the grantors, the result does not change. By the law of merger, the provision of the agreement relating to exclusivity is merged in the quitclaim deed which does not include such language.

■ By the doctrine of merger, a buyer's acceptance of a deed tendered in performance of a contract to convey serves to extinguish those covenants in the antecedent contract that relate to the title, possession, quantity, or emblements of the land. *City of Westminster v. Skyline Vista Development Co.,* 163 Colo. 394, 431 P.2d 26 (1967). One who conveys an easement has given up the right to use the strip of land for uses inconsistent with roadway use, and he has parted with one of the elements constituting fee simple title. Hence, because title and possession would be affected by the easement at issue here, the doctrine of merger extinguishes the provision in the written agreement establishing an exclusive easement in Skidmore.

## C. THE AGREEMENT CONCERNING MAINTENANCE

■ The doctrine of merger does not affect covenants in an antecedent contract

which are not intended to be incorporated in the deed or which relate to aspects of the transaction outside of the conveyance itself. *City of Westminster v. Skyline Vista Development Co., supra.* Thus, while we have held that the portion of the agreement relating to exclusivity of use is subsumed or merged within the deed, a contrary result must obtain as to the maintenance provision in the written agreement. The latter provision was collateral to the conveyance and was the type of obligation —maintenance—as to which parties would intend to govern their actions after delivery of the deed. Thus, we hold that the provision stating "costs of construction and maintenance of the roadway easement shall be borne solely by James E. Skidmore" survives the subsequent deed and remains in full force and effect even though not restated in the deed.

In summary, we conclude that while Skidmore and the defendants, his grantors, have the joint right to use the easement, the obligation to maintain and repair it rests with Skidmore alone.

## II.

We do, however, agree with Skidmore that the trial court erred in awarding defendants Feil, Callan, and La Plata Abstract Co. attorney fees incurred after the court granted partial summary judgment.

When the trial court opined more than a year before trial that the doctrine of merger was applicable to this case, and plaintiff's maintenance agreement was extinguished, the real possibility arose that maintenance of the roadway, based on the parties' respective use, would be determined. Since property in which Feil, Callan, and La Plata have an interest was subject to the easement, their use of the easement, and possible maintenance responsibility, properly remained subjects of the litigation. Lack of clarification of these issues was exacerbated by late discovery responses from these defendants.

The record reveals that plaintiff's claims as to Feil, Callan, and La Plata were not devoid of rational argument based in evidence or law, were not frivolous and groundless, and an award of attorney fees to these defendants was not proper. *Western United Realty, Inc. v. Isaacs,* 679 P.2d 1063 (Colo.1984).

The judgment awarding certain defendants attorney fees is reversed. The judgment in favor of the defendants against Skidmore is affirmed in all other respects.

VAN CISE and JONES, JJ., concur.